WILLIAM CAMPBELL, Respondent, *v.* ABNER M. WRIGHT, et al. Appellants.

Where brokers who had sold wheat short for a customer on a margin bought in without authority on his account, and he, on being advised thereof, repudiated the purchase and subsequently directed the brokers to purchase for him at a price specified, which they refused to do, and it appeared that wheat could have been purchased in the market for several days after the order at the price named, *held*, that plaintiff's damages were the amount defendants would have been indebted to him, had they made the purchase as directed ; that for the purpose of the remedy plaintiff's position was not affected by the unauthorized purchase ; that the breach of contract was in the refusal of defendants to purchase when and as instructed, and this fixed the measure of damages. The distinction between such case and one of a purchase by a broker for his customer on a margin pointed out.

(Argued January, 14, 1890 ; decided February 25, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department entered upon an order made February 23, 1887, which affirmed a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts are sufficiently stated in the opinion.

*D. M. Porter* for appellants. The margin having been demanded a reasonable time before the wheat was bought in, the defendants were entitled to a verdict as a matter of law, and the submission of the question to the jury by the court was error. (*Wheelock* v. *Tanner*, 39 N. Y. 481–486; *Sterling* v. *Jaudon*, 48 Barb. 459; *Milliken* v. *Dehon*, 27 N. Y. 364, 366, 372.) The stop order limit having been reached, and the purchase of wheat having been made pursuant to the stop order, it was legal. (*Porter* v. *Wormser*, 94 N. Y. 431; *Wheelock* v. *Tanner*, 39 id. 481, 486; *Pollock* v. *Pollock*, 71 id. 137, 140.) The court erred in charging that plaintiff was entitled to recover the $2,000 in this action, and that it was immaterial whether the action was for a conversion or for a breach of contract. (*Gruman* v. *Smith*, 85 N. Y. 25; *Baker* v. *Drake*, 53 id. 211; 66 id. 518, 524; *Colt* v. *Owens*, 91 id. 368.) There being no time mentioned when the margin should be paid, it was payable on a reasonable demand, and plaintiff having failed to pay it was a breach of the contract. (*Oakley* v. *Morton*, 11 N. Y. 25; *Paige* v. *Ott*, 5 Den. 406; *Story* v. *Brennan*, 15 N. Y. 524; *Booth* v. *B. & A. R. R. Co.*, 67 id. 593; *Hutchins* v. *Hutchins*, 98 id. 56; *Leeds* v. *M. G. L. Co.*, 90 id. 26; *Baldwin* v. *Burrows*, 47 id. 199; *Sayre* v. *Townsend*, 15 Wend. 647; *Rogers* v. *Murray*, 3 Bosw. 357; *Weber* v. *Kingsland*, 8 id. 415, 416; *Green* v. *H. R. R. R. Co.*, 32 Barb. 25; *Nixon* v. *Palmer*, 10 id. 175; *Flanders* v. *Merritt*, 3 id. 201; *Fry* v. *Bennett*, 28 N. Y. 324; *Anderson* v. *Rounce*, 54 id. 334; *Requa* v. *Holmes*, 16 id. 193; *C. Bank* v. *U. Bank*, 11 id. 203, 210.)

*W. R. Darling* for respondent. The question admitted as to the price of wheat on April 13, 14 and 15, 1885, was proper.

It did not call for hearsay evidence, and there was no motion to strike out the answer, or any part of it, after it was made or after the cross-examination, or for any instruction to disregard it. (*Turner* v. *City of Newburgh,* 109 N. Y. 301; *Denise* v. *Denise,* 110 id. 562; *Platner* v. *Platner,* 78 id. 91; *Lerche* v. *Brasher,* 104 id. 157; *Byrnes* v. *Byrnes,* 102 id. 5, 9; *White* v. *O. D. S. S. Co.,* Id. 660, 664; *Williams* v. *Sargeant,* 46 id. 481.) The evidence offered and received that the " stop order " price of ninety-three and three-eighths was not reached at any regular session of the board, or at any sale in the usual and ordinary way, and did not justify a purchase in, to cover, under the " stop order " was proper. (112 N. Y. 226; *Schwinger* v. *Raymond,* 105 id. 648; *McCarney* v. *People,* 83 id. 409, 415; *T. A. R. R. Co.* v. *Ebling,* 100 id. 98, 100; *S. O. Co.* v. *A. Ins. Co.,* 79 id. 506, 510; *Langley* v. *Wadsworth,* 99 id. 61.) The letter offered and received was properly admitted. (*Scott* v. *M., etc., R. R. Co.,* 86 N. Y. 200, 208, 209; *Roe* v. *Day,* 7 C. & P. 705; 97 N. Y. 10; *Strong* v. *Strong,* 1 Abb. Pr. [N. S.] 233, 237; *Nunn* v. *Reitzenthaler,* 18 Wkly. Dig. 114, 115; *Newcomb* v. *Cramer,* 9 Barb. 402; *N. E. M. Ins. Co.* v. *De Wolf,* 8 Pick. 56; *Holler* v. *Weiner,* 10 Penn. St. 242; *Waldele* v. *N. Y. C. & H. R. R. R. Co.,* 95 N. Y. 274, 275.) To the ruling as to the admission of the plaintiff's " demand " letter to defendants, there was no exception. It is, therefore, useless on appeal. (*Schwinger* v. *Raymond,* 105 N. Y. 648; *T. A. R. R. Co.* v. *Ebling,* 100 id. 98, 100; *Loof* v. *Lawton,* 97 id. 478, 484; *Stokes* v. *Johnson,* 57 id. 673, 675; *Learned* v. *Tillotson,* 97 id. 1, 10.) Under the facts of this case the defendants were bailees or depositaries of the " margin " moneys of plaintiff in their hands for possible indemnity in this transaction, and for return of which this suit was brought. They came rightfully into its possession, and on their refusal to perform their contract, demand was necessary to plaintiff's suit for its return, both to fix a date for the running of the statute of limitations, and of interest, and to put them in the wrong. (*Sharkey* v. *Mansfield,* 90 N. Y. 227, 229; *Southwick* v. *F. Nat. Bank,*

84 id. 420, 430; *Paine* v. *Gardiner*, 29 id. 146; *Goodwin* v. *Wertheimer*, 99 id. 149, 153; *Dart* v. *Laimbeer*, 107 id. 664, 669; *Lerche* v. *Brasher*, 104 id. 157, 161; *Tenney* v. *Berger*, 93 id. 524, 531; *Adams* v. *Bowerman*, 109 id. 23, 31.) That part of the answer objected to, that the record made up was the "only official record of tranactions" and quotations in the board, was proper upon the question as to whether there was a record of them or not. (*Champney* v. *Blanchard*, 39 N. Y. 111, 115; *Wilson* v. *N. Y. C. R. R. Co.*, 2 Trans. App. 298; *Turner* v. *City of Newburgh*, 109 N. Y. 301, 308.) The record being of the Chicago Board of Trade and being taken there, was presumptively out of the jurisdiction of the trial court, and not in control of plaintiff; proof of its contents was therefore proper. (*Burton* v. *Driggs*, 20 Wall. 125, 134; *Bronson* v. *Tuthill*, 1 Abb. Ct. App. Dec. 206.) The use of such records and evidence of the credit given to them and of their circulation among the trade as evidence of quotations is supported by *Slocovich* v. *O. Ins. Co.* (108 N. Y. 56, 62, 63); *Lush* v. *Druse* (4 Wend. 313, 317); *Ellsworth* v. *Ætna Ins. Co.* (26 Wkly. Dig. 53); *Mayor, etc.*, v. *S. A. R. R. Co.* (102 N. Y. 573, 580); *Whelan* v. *Lynch* (60 id. 469); Cliquot's Champagne (3 Wall. 114, 141); Fennerstein's Champagne (3 Wall. 145); *Garwood* v. *N. Y. C. & H. R. R. R. Co.* (27 Wkly. Dig. 25; 45 Hun, 128, 130); 1 Whart. on Ev. (2d ed.) § 674. All the matters as to the board of trade records, quotations, acceptance, circulation and reliance were fully admitted in evidence and proved without objection. Even if erroneously admitted before, such subsequent admission without objection, makes any prior admission of them no ground of error on appeal. (*White* v. *O. D. S. S. Co.*, 102 N. Y. 660, 664; *Byrnes* v. *Byrnes*, Id. 4; *People* v. *Driscoll*, 107 id. 414, 425.) The case does not show that there was any such special contract between the parties as appears in many of the reported cases, that the broker might close the plaintiff out without call for margin and reasonable notice to furnish it — reasonable notice is implied from this contract unless it is specially waived. (*Markham* v. *Jaudon*,

41 N. Y. 235, 239; *Hess* v. *Rau*, 95 id. 359, 362.) There was no error in the charge; it is to be construed as a whole and not by detached phrases merely. (*Cumming* v. *B. C. R. R. Co.*, 104 N. Y. 669, 673; *Losee* v. *Buchanan*, 51 id. 476, 493; *Caldwell* v. *N. J. S. Co.*, 47 id. 282; *People* **v.** *Dimmick*, 107 id. 14.) The rule in ·cases of conversion does not apply here; there was nothing to convert. The complaint settled the character of the suit as in contract. (*Welsh* v. *Darragh*, 52 N. Y. 590; *Carpenter* v. *Stilwell*, 11 id. 61; *Hamilton* v. *Eno*, 81 id. 116, 127; *Palmer* v. *Holland*, 51 id. 416; *Hodges* v. *Cooper*, 43 id. 216.)

BRADLEY, J. The defendants, brokers at Chicago, on the 9th day of April, 1885, pursuant to arrangement with plaintiff, who lived in the city of New York, sold short for the latter 50,000 bushels of wheat at the price of eighty-seven and five-eighths cents per bushel, deliverable in May following.. The defendants were represented in the city of New York by one Brown, and one Dawson acted for the plaintiff there. To carry out the arrangement the plaintiff deposited with Brown $1,500 on that day, and on the thirteenth April a call was made upon him for the further sum of $1,500, which was furnished on that day and the morning of the fourteenth.

Late in the evening of the thirteenth Brown sent a telegram to the plaintiff asking for an additional margin of $1,500, and saying that May‍ wheat closed on curb at ninety-one and a quarter. This last call was not met by the plaintiff, and on the next day Brown sent a messenger to him with a note requesting him to send that amount by the bearer, and adding that wheat was then ninety-two and a quarter. This was sent at 1.30 P. M. a distance of four miles to plaintiff, who, in reply, sent by the bearer of it to Brown a stop order, so-called, directing the defendants to cover his short by purchase on his account when the price reached ninety-three and three-eighths, which the $3,000 margin already supplied would permit.

This was received by Brown at 3.05 P. M. of the fourteenth, and he replied to this stop order by dispatch sent from tele-

graph office at 3.39 P. M. to the plaintiff, to the effect that the defendants would do the best they could, but could not carry over night if market closed near the stop order limit.

The time before mentioned was that in New York, the Chicago time was one hour less. The daily sessions of the board of trade in Chicago were from 9.30 A. M. until 1 P. M., and from 2 to 2.30 P. M. The defendants, at 2.25 P. M. Chicago time, bought in fifty thousand bushels of wheat at ninety-one and three-eighths on the plaintiff's account. The latter, when informed of it, and on sixteenth April, gave the defendants notice that he repudiated it, and instructed them to purchase on his account fifty thousand bushels May wheat at eighty-seven and three-eighths. The defendants, treating the transaction of the sale of the ninth April closed by their purchase, declined to do so. And the plaintiff, on the next day, demanded of them the payment to him of $3,000 damages. They paid him $1,000, the balance as represented by their account of the transaction of the sale and purchase. This action was brought to recover the residue of the asserted claim. And the plaintiff recovered $2,000 and interest. The main question litigated on the trial was, whether the purchase made by the defendant on plaintiff's account was in violation of their duty to him, which they assumed when they made the sale on his account.

If they had no right to close the transaction as they sought to do by buying in the wheat on the fourteenth April, the defendants were liable to the plaintiff for damages resulting from the purchase, and from the refusal to purchase, pursuant to the instructions given them by the plaintiff on the sixteenth April, fifty thousand bushels on his account at eighty-seven and three-eighths, as the price on that day had declined to and below that figure, and remained less for at least four days thereafter. So that the plaintiff's instructions may have been accomplished, and, from the purchase so made, the plaintiff would have realized sufficient to reimburse him the full amount of $3,000 margin he had deposited with the defendants. The relation of the defendants to the plaintiff was that of agency,

and so long as he performed his part of the contract the adventure was subject to his control. But the brokers had assumed a responsibility in making the sale. They were responsible for the delivery of the wheat when due, or for the payment of the difference in price to the purchaser if it then became enhanced. And consequently the defendants had the right to protection from the plaintiff, whose duty it was to supply a suitable fund for margin to cover advances in price. If the plaintiff failed within a reasonable time after call for it to furnish the requisite amount for such purpose, the defendants were at liberty to purchase an equal quantity on his account, and charge the plaintiff with any deficiency in case of loss by the transaction. And on the other hand the plaintiff had the right to designate a limit in advancing price at which the purchase should be made within that which his deposits for margin would cover. There were no special stipulations in the arrangments between the parties. Their rights were dependent upon the general principles applicable to such cases. And their opportunities respectively for the protection of their rights in the transaction were, to be reasonable under the circumstances which should arise. The evidence tends to prove that the defendants had on the thirteenth and fourteenth April reason to apprehend an advance in the price of wheat occasioned by rumors of war in Europe; that on those days the market was in an excited condition, and on the fourteenth April the price in the board reached ninety-two and seven-eighths.

In this situation may be seen the reason for the notice to the plaintiff, in reply to his stop order, that the defendants could not carry the sale over night if the market closed near the stop loss limit without further margin. The reason of their apprehension was communicated to the plaintiff. And in the notice of the purchase they stated to him that it was too dangerous to accept the stop order in place of margin, and that they were obliged to close the account to protect themselves, as the plaintiff had limited his loss to $3,000.

In case of loss beyond the amount of margin supplied,

the defendants' protection was dependent upon the responsi-
bility of the plaintiff to pay the balance of the account result-
ing from the strict observance of his instructions. The
situation, as represented by the evidence, presented questions
of fact, whether the price mentioned in the stop order was
regularly reached on the fourteenth April before the purchase,
and, if so, whether the purchase was made in the execution of
the order. Also, whether the plaintiff was in default in fur-
nishing margin upon the defendants' call for it. Those two
propositions were submitted to the jury with instruction that
the defendants were entitled to a verdict if they found either
of them in the affirmative, and that if they found both of
them in the negative, the plaintiff was entitled to recover.
There was some evidence, not here mentioned, essentially
bearing upon those questions, and which tended to support
the view of the trial court. But as no exception was taken to
the submission of those questions to the jury, and none which
requires on this review the consideration of the sufficiency of
evidence to support a recovery by the plaintiff, it is unneces-
sary to make further reference to the evidence. The defend-
ants' counsel requested the court to charge "that the plaintiff
can only recover damages for breach of contract, and not
conversion, and the damage for breach would be the value of
the property at the time of the breach, and notice of it." And
the court said : "I shall charge that he is entitled to recover
the $2,000 in this action. It is immaterial whether a con-
version or breach of contract."

The defendants' counsel excepted, and to the charge "that
the plaintiff can recover $2,000 " exception was specifically
taken. It was evidently not the purpose of the court to
charge that the plaintiff was entitled to recover, nor can the
remark of the court following the request be so treated. The
court had charged that the plaintiff's right to recover was
dependent upon the finding by the jury in his favor on the
questions of fact submitted to them as before mentioned. The
response of the court to the request was to the effect that if
the jury found for the plaintiff he was entitled to recover

$2,000. The transaction in question was speculative. It was an adventure founded upon what is known as "short sale." There was no support for an action for conversion of wheat. In that respect it theoretically differs from a purchase for speculation by a broker for his customer, in which case, if the broker makes an unauthorized sale, the principal may disaffirm it and require the broker to replace the stock or property, and upon his failure to do so the remedy of the principal is to replace it himself, and the advance in the market-price from that at the time of the sale up to a reasonable time to replace it, is the measure of damages. (*Baker* v. *Drake*, 53 N. Y. 211; *Gruman* v. *Smith*, 81 id. 25.) The present case was not one of investment on purchase, but a venture on a sale of wheat which the plaintiff did not have, with a view to realize a profit by buying in at a lower price at a future time, or what is practically the same thing, taking the difference between the price at the time of sale and a reduced price subsequently.

In view of the finding of the jury it must be assumed that the purchase by the defendants on the fourteenth April was unauthorized, and for the purpose of the remedy the situation of the plaintiff in respect to the sale previously made by them on his account remained unaffected by such purchase.

They were not at liberty to treat it as made on his account. When, therefore, he gave the defendants instructions, as he did on the sixteenth April, to purchase at eighty-seven and three-eighths, it was their duty to do so, if the state of the market permitted. The fact is not questioned that on that day and for four days following, the market price at the board in Chicago had declined to that and even less, and the wheat could have been purchased pursuant to such instructions. This would have produced for the plaintiff the principal sum of his recovery. And no less a sum would indemnify him for the loss he suffered by the refusal of the defendants to make the purchase as he directed. The court properly held that in the event he was found entitled to a verdict the measure of his recovery should be $2,000, and interest from

April 16, 1885. (*White* v. *Smith*, 54 N. Y. 522; *Knowlton* v. *Fitch*, 52 id. 288; *Hess* v. *Rau*, 95 id. 359.) The defendants were not prejudiced by the charge that it was immaterial whether the recovery was as for conversion or breach of contract. The facts, when found in favor of the plaintiff, required the result given by the verdict. The breach of the contract was in the refusal of the defendants to purchase when and as instructed to do, and the damages resulting from such breach were no less than such amount. The witness Dawson stated that he knew what was the market-price of wheat on the 13th and 14th of April, 1885, and was then asked what price it reached on the thirteenth, fourteenth and fifteenth of that month with reference to the point at which this was margined, to which the defendants objected, on the ground that it is not possible for the witness to know, except by hearsay, as he was in New York. And exception was taken to the reception of the evidence. The answer of the witness was that ninety-two and seven-eighths was the highest he knew of or saw quoted. It did not appear when the objection was taken that the witness was in New York on those days, or that he was not then in Chicago. He stated that he knew the market-price at that time. When it had afterward appeared that the witness was not in Chicago on either of those days, but took his information from a "ticker" in New York, no motion was made to strike out his answer to the question. No error appearing in the ruling at the time it was made, the exception was not well taken. The defendants could not have been prejudiced by this evidence of the witness, as it appeared by other evidence that the highest price reached by the board in Chicago on those days was the same as that stated by him, and that was on the fourteenth of April. The ticker purported to indicate the prices at the board only. The sale, which the evidence tended to prove was made that day for ninety-three and three-eighths, was outside, and between the morning and afternoon sessions of the board. The evidence of the witness to which the objection was taken did not tend to controvert that fact.

The other exceptions have been carefully examined and there seems to have been no error to the prejudice of the defendants in any of the rulings to which they were taken.

The judgment should be affirmed.

· All concur, except PARKER, J., dissenting and POTTER, J. not sitting.

Judgment affirmed.