(20 App. Div. 616.)

LAZARE v. ALLEN et al.

(Supreme Court, Appellate Division, Second Department. October 5, 1897.)

1. STOCK BROKERS—UNAUTHORIZED PURCHASES—JUSTIFICATION.

Certain stock was sold short by defendants, who were brokers, on account of plaintiff as their customer, on a margin, for which he made a deposit; the venture to be consummated by buying in the stock upon his direction. They thus became bound to obey such orders, if he kept them protected; but it was contemplated that if, on reasonable notice, he did not do so, they might purchase on his account for their own protection. They did buy in the stock, without any order from him, at a price involving a loss. *Held* that, to support the purchase as made on his account, it was essential to show that there was occasion to call upon him to make further deposit, and that he failed to do so after having reasonable notice prior to the purchase.

2. SAME—MARGINS—NOTICE OF CONSUMPTION.

One hour's notice for a deposit of further margins is not ordinarily reasonable, so as to justify a broker to cover a transaction and close the deal with his customer without his order or consent.

3. TRIAL—DIRECTION OF VERDICT—REVIEW.

Where both parties move for the direction of a verdict, and request no submission to the jury, any question of fact is deemed to have been treated as for the court, and determined in support of the verdict directed.

Appeal from trial court, New York county.

Action by Adolph H. Lazare against Henry Allen and Edward L. Norton. From a judgment entered on a verdict directed for plaintiff for $64.35, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

John R. Dos Passos, for appellant.
William P. Quin, for respondents.

BRADLEY, J. The defendants were brokers in the city of New York, doing business in the firm name of Henry Allen & Co. The plaintiff became their customer in a transaction by which 300 shares of the capital stock of the Louisville & Nashville Railroad Company were sold short on his account about September 12, 1893 (200 of the shares at 54¾ and 100 shares at 54¼), on a margin, for which the plaintiff deposited with the defendants $1,000. This was a speculative venture of the plaintiff, to be consummated by buying in the stock, through the agency of the defendants, upon the direction of the plaintiff. They, by their relation to the business, undertook to obey his orders in that respect if he kept them protected by a sufficient fund to adequately cover the margins. It was within the contemplation of the parties to the contract that if the plaintiff, upon reasonable notice, should fail to do so, the defendants would be at liberty to purchase on his account for their own protection. On September 26th the plaintiff sent his order to the defendants to make the purchase of the stock to cover the sale short, before mentioned. The price of the stock had then fallen to 51½ on the market. A purchase at that price would have given the plaintiff a profit of $925. For the alleged failure of the defendants to obey that order the plaintiff seeks to recover as damages that sum, together with the amount so deposited with the defendants as margins. Upon such a state of facts the plaintiff would have been entitled to that result. Campbell v. Wright, 118 N. Y. 594, 23 N. E. 914; Rogers v. Wiley, 131 N. Y. 527, 30 N. E. 582. But on the part of the defendants it is claimed that the plaintiff was in default in not furnishing money to make good and take care of the short sale; that as a consequence they had on September 22d bought in the stock on the plaintiff's account at 56, which purchase left to his credit only $64.35; and that he was entitled to recover only that amount. The purchase was made without any order from the plaintiff, and, to support it as made on his account, it was essential to the defense that it be made to appear that there was occasion to call upon the plaintiff to make further deposit for the protection of the defendants, and that he failed to do so, after having reasonable notice prior to the purchase to furnish the money. White v. Smith, 54 N. Y. 522. This was the implied provision of the contract pursuant to which the sale of the stock short made by the defendants was to be taken care of by them on the plaintiff's account,

and for which they remained responsible until covered by purchase. There were no special stipulations in the arrangement between the parties to take the transaction out of the general rule applicable to such ventures as between a principal and his broker's agency.

On the part of the defendants, evidence was given tending to prove that on September 18th the price of Louisville & Nashville Railroad Company's stock ranged from $53\frac{3}{8}$, the lowest, to 56, at the highest, and that on that day the plaintiff was informed by the defendants that the stock had advanced to 56, and that they would have to have more money immediately on that account, or they could not carry it any longer; that the plaintiff neither put up any more money, nor promised to do so; that on the next day the price of the stock ranged from $54\frac{1}{2}$ to $55\frac{1}{8}$, and on September 20th from $54\frac{1}{4}$ to 55, and that on each of those days the like notice and request were given and made upon him in behalf of the defendants, with the same results; that on September 22d the price of the stock opened in the market at $56\frac{3}{8}$; that to purchase the stock at such price would require a sum in excess of that then to the plaintiff's credit in his account with the defendants; and that the apparent condition was such when the stock stood at $56\frac{3}{8}$ that the plaintiff was indebted to them. They gave evidence to the effect that between 10 and half past 10 in the forenoon of that day (September 22d) their agent, who was sent to the plaintiff, called on him, about a block distant from their office, and told him that the defendants wanted additional margins right away; that the plaintiff then said that "he would go up and see his friend, and would bring the money down at once, immediately, if his friend was in"; that the stock was purchased by the defendants about 12 o'clock noon of that day, and notice of the purchase sent to the plaintiff's office; that about half past 12 o'clock the plaintiff appeared at defendants' office, and was then advised of the purchase made on his account, he having stated that he had not been at his office since the notice was sent there. Afterwards, on the same day, the plaintiff returned the notice, with a note to the defendants that he would not accept it as he had given no order to cover, and that he was ready to put up additional margin. The plaintiff does not adopt as true the evidence on the part of the defendants relating to the interview with him on the 18th and 19th days of September, says he has no recollection of such conversations, and denies that he was then asked to put up more margin. His evidence also is that, after the interview with defendants' agent on September 22d, he was at the defendants' office at half past 11 o'clock. This was about an hour after he was notified to furnish more money to defendants. Whether that is a reasonable notice to justify a broker to cover a transaction and close the deal with the customer, without his order or consent, depends upon circumstances. Cameron v. Durkheim, 55 N. Y. 425. In any view which may be taken of the occurrences of the 22d of September, standing alone, the notice to supply more money cannot well be deemed to have been reasonable in point of time, prior to the purchase which the defendants assumed to make on the plaintiff's account. While the stock opened at $56\frac{3}{8}$, the price had dropped to 56, when the purchase was made; and no circumstances appear which fairly justified the de-

fendants, for their protection, in making the purchase to cover the sale within an hour and a half. It is true that, according to the evidence on their part, the defendants were not advised that the plaintiff would be able to supply the margin required. He seems not to have had means himself, but was dependent upon his friend, from whom he sought to obtain it. His evidence is that when he went to defendants' office, following such notice on that day, he had arranged for the money, and that he then advised them that the check would be there in a few moments to be put up. The evidence on the part of the defendants is that they offered to take the money from the plaintiff and replace the stock at the price they had purchased it; replace him in the same position he was in at and immediately preceding the time of the purchase. This he declined. The only evidence that he had made arrangements to get the money, and that it was ready and would be there for the purchase, was in the testimony of the plaintiff alone. He says that he had no money of his own, and that his only chance of getting it depended upon somebody else. It is said not to be unusual for such to be the condition of persons who, like the plaintiff, have had a long experience in dealing in futures. He says that for about 40 years he had been engaged more or less in stock transactions, buying and selling long and short, on margins, and understood the nature of the business. The evidence tends to prove that the condition of the stock market was a matter of his daily observation. Now, to go back to the occurrences of the 18th and 19th of September, as represented by the evidence on the part of the defendants, it appears that the plaintiff manifested no purpose to comply with the notice and request to supply further margin. There was on those days an upward tendency of the stock; and as the defendants had to borrow the stock from day to day, and pay the current premium, and as the fund deposited for margin was but a small percentage, it cannot be seen that they were not justified, for their protection, in calling on those days upon the plaintiff for more money. Whether he was so called upon was a disputed question of fact for the jury, and, if they found upon it in the affirmative, they may have declined to find that he had the money ready for use on September 22d; and, as bearing upon the question of his purpose in that respect, his refusal to permit the defendants to restore him to the position in which he was at the time of the purchase might not have been entirely without significance. It would seem to follow that whether or not the plaintiff, after reasonable and proper notice to furnish money for margin, was in default in that respect, was a question of fact upon the evidence. As the appeal is from the judgment alone, that question is not here for consideration; and as the plaintiff as well as the defendants requested the direction of a verdict, and requested no submission to the jury, any question of fact is deemed to have been treated as for the court, and determined in support of the verdict directed. Koehler v. Adler, 78 N. Y. 287.

These views lead to the conclusion that the judgment should be affirmed. All concur.