JOHN A. SNYDER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39169. Promulgated September 11, 1930.

*H. A. Fellows, Esq.,* and *A. E. James, Esq.,* for the petitioner.
*R. S. Scott, Esq.,* for the respondent.

OPINION.

BLACK: The respondent made explanation of the change made in computing petitioner's income, as follows:

In accordance with Article 39, Regulations 69, when shares of stock in a corporation are sold from lots purchased at different dates and at different prices and the identity of the lots cannot be determined, the stock sold shall be charged

against the earliest purchases of such stock. The increase in the profit on sale of stock is the result of applying the cost of the earliest purchases against the selling price.

In contradiction to the method used by respondent in his determination, the petitioner takes the position that the sales of stock made in 1925 were made in each instance from the stock most recently purchased and that when this basis is used, the sales show a loss instead of a profit.

The testimony that was adduced at the trial convinces us that the position of the respondent is correct. It is obvious that the stock purchased by the brokers for the petitioner's margin account was held in their names commingled with similar stock purchased for other customers operating in margin accounts, and that at no time during the two years when this stock was being accumulated was any stock transferred to the name of the petitioner. The following testimony clearly indicates that the identification of any particular stock was not made because of the nature of the transactions.

Witness Flitcraft testified as follows:

Q. And if you had purchased the same class of stock for 25 people during the day, outside of having the total number of shares, you could not identify any of that stock as belonging to any particular one of the 25 when it is delivered?
A. No.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Q. When those sales were made and an order given to sell stock, is there any way in which you can identify the particular stock certificates that were Mr. Snyder's?
A. No.

Q. You have stated previously that when a sale was made,. that covered certain purchases, in naming the dates and the amounts, is that not more of a bookkeeping method rather than an indication of what specific stock was sold?
A. I would say that it was a method which any client would use that was pyramiding in any stock securities.

Q. Had it any relation whatsoever to the stock certificates which may or may not be sold under the order?
A. No.

And then again, witness Robert McDonald, Jr., manager of one of the brokerage houses that handled the account, testified:

Q. But how can you identify the particular share of stock in a case where you made an additional purchase?
A. Except in the capacity of a broker, I knew that he had bought more securities than he should have. If he had not made his recent purchases, his account would not have been embarrassed. Therefore we felt we were selling out immediately what would have been good purchases if the market had gone up but on account of the declining market that he had made a mistake. Therefore we felt that we were disposing of the article that embarrassed the account. It was a mental condition entirely.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Q. But as to the number of shares of stock that were sold, you could not tell whether it was the first purchase or the last?

A. All the securities in a broker's office are put in the name of the firm until paid for. We probably had ten or fifteen thousand shares of United Gas Improvement in our office while Mr. Snyder was operating. I couldn't identify any particular stock of Mr. Snyder's or any body else's. It was common property.

The petitioner in support of his contention cites *Howbert* v. *Penrose*, 38 Fed. (2d) 577, wherein it is held that evidence of the actual property sold is controlling over the provisions of article 39 of Regulations 69. We think that decision is thoroughly sound. But the essential facts in the instant case differ from those in the *Penrose* case, where the trial court, on the evidence of Penrose, found that he intended to and did sell certain blocks of stock purchased in 1916 and 1917. Evidence of the petitioner's intention to sell any designated stock is lacking in the proceedings under consideration. Petitioner did not testify at all. As a matter of fact we do not know what particular stock he sold and perhaps no one knows, since the petitioner never had possession of any particular stock, and no shares were ever earmarked in his name. In the case of sales of stock which are not identified, we have approved the Commissioner's determination that it will be deemed that the vendor first sells or disposes of those shares which he first acquired. See *David Stewart*, 17 B. T. A. 604, and the cases cited therein, and *Western Bank & Trust Co.*, 19 B. T. A. 401, 412.

*Judgment will be entered for the respondent.*