ROBERT W. BINGHAM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51051.  Promulgated November 29, 1932.

*Donald V. Hunter, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

OPINION.

STERNHAGEN: Respondent determined a deficiency of $20,061.92 in petitioner's income tax for 1928 by treating short sales of Victor Talking Machine stock as if they were ordinary sales of Victor stock previously purchased by petitioner. The facts are stipulated as follows:

(1) The petitioner is an individual and a resident of Louisville, Kentucky. He is now and has been since prior to 1928, the owner and publisher of the Courier-Journal and The Louisville Times. For the calendar year 1928, he filed his individual income tax return with the Collector of Internal Revenue at Louisville, Kentucky.

(2) Throughout the years 1927, 1928 and 1929, petitioner traded in stocks with the brokerage firm of Clement, Curtis & Company of 231 South LaSalle Street, Chicago, Illinois, a member of the New York Stock Exchange.

(3) Petitioner's trading was done through his nephew, Lawrence K. Callahan, a resident of Chicago and a member of the firm of Clement, Curtis & Company.

(4) During the years 1927, 1928 and 1929, petitioner maintained with Clement, Curtis & Company, an investment account and "long" and "short" trading accounts. These two latter accounts were margin accounts.

(5) Attached hereto marked Exhibit "A" are photostat copies of original records of Clement, Curtis & Company, consisting of eleven pages, reflecting orders to purchase and sell Victor Talking Machine Company stock in behalf of the petitioner.

(6) Attached hereto marked Exhibit "B" are photostat copies of original records of Clement, Curtis & Company, consisting of ten pages, reflecting purchases and sales of Victor Talking Machine Company stock in behalf of the petitioner.

(7) When the purchases of Victor stock were made for petitioner's long account, the certificates which were delivered to Clement, Curtis & Company on account of these purchases were not registered in petitioner's name or otherwise earmarked. Under the broker's practices, these certificates were freely used by the brokers. They might be pledged, they might be loaned to other brokers for delivery against short sales, or they might be borrowed by Clement, Curtis & Company and used to cover short sales in Victor Talking Machine Company stock made by their own customers. However, the brokers were obligated to make delivery of an equal amount of this stock to petitioner upon payment of the purchase prices at which these shares were purchased for petitioner, or to deliver such amount of stock in fulfillment of sales of the stock made by petitioner's orders. The certificates which petitioner would receive if delivery was made to him, or which would be delivered in fulfillment of petitioner's order to sell would not be the same certificates as were received by Clement, Curtis & Company, when the purchases for petitioner's long account were made, except by an unusual coincident [*sic*].

(8) When sales were made for petitioner's short account, delivery in fulfillment of the sales was made either out of Victor Talking Machine Company stock purchased and in the possession of Clement, Curtis & Company, on account of its margin customers generally, or from stock borrowed from other brokers for purposes of the short sale, and the certificates so delivered were not the certificates received when the purchases for the long account were made, unless by mere coincident [sic], and even in that event the delivery would have been of stock borrowed from the broker's general holdings with an obligation to return a like amount in order to satisfy the requirements of the long accounts of its customers.

(9) In making his income tax return for the calendar year 1928, petitioner reported profits of $84,120.00 and $18,285.00 from his purchases and sales of Victor Talking Machine Company stock made through Clement, Curtis & Company, arrived at as follows:

| | | |
|---|---|---:|
| Feb. 27, 1927 | Bought 1000 at 36⅞ | $37,025.00 |
| Sept. 6, 1927 | " " " 36½ | 36,650.00 |
| | | $73,675.00 |
| Mch. 7, 1928 | Sold 1000 at 70 | $69,785.00 |
| Mch. 26, 1928 | " " " 88¼ | 88,010.00 |
| | | $157,795.00 |
| | | 73,675.00 |
| | Profit | $84,120.00 |
| Dec. 14, 1928 | Bought 100 at 121¼ | $12,150.00 |
| | " 100 " 121⅝ | 12,162.50 |
| | " 300 " 121½ | 36,525.00 |
| | " 100 " 124⅞ | 12,512.50 |
| | " 400 " 125 | 50,100.00 |
| | | $123,450.00 |
| Nov. 30, 1928 | Sold 500 at 148 | $73,855.00 |
| Dec. 5, 1928 | " 100 " 136¼ | 13,596.00 |
| | " 400 " 136 | 54,284.00 |
| | | $141,735.00 |
| | | 123,450.00 |
| | Profit | $18,285.00 |

27 B. T. A.

(10) In auditing said income tax return of the petitioner for the calendar year 1928, respondent accepted as correct the profit of $84,120.00, as reported by petitioner. Respondent, however, increased the profit of $18,285.00, as reported by petitioner, to $142,402.50 by applying the rule of " first in-first out," as follows:

*Sale of 500 Shares of Victor Talking Machine Company Stock on November 30, 1928.*

| | |
|---|---|
| Selling price | $73, 855. 00 |
| Cost [1] | 21, 237. 50 |
| Profit | 52, 617. 50 |

*Sale of 500 Shares of Victor Talking Machine Company Stock on December 5, 1928.*

| | |
|---|---|
| Selling price | $67, 880. 00 |
| Cost [1] | 21, 237. 50 |
| Profit | 46, 642. 50 |

*Sale of 500 Shares of Victor Talking Machine Company Stock on December 17, 1928.*

| | |
|---|---|
| Selling price | $71, 855. 00 |
| Cost [2] | 28, 712. 50 |
| Profit | $43, 142. 50 |

The question which the parties have argued as arising from this stipulation is merely whether a short sale of Victor common may and must be matched against a prior margin purchase of Victor common, with a computation of the resulting gain or loss; in which event, the computation is made upon the first in–first out rule of article 58, Regulations 74. The first in–first out rule, within its proper sphere, has been several times approved. *Snyder* v. *Commissioner*, 54 Fed. (2d) 57; affirming 20 B. T. A. 778; *Skinner* v. *Eaton*, 45 Fed. (2d) 568; certiorari denied, 283 U. S. 837; *Estate of Richard B. Turner*, 26 B. T. A. 1204; *Burdett Stryker*, 21 B. T. A. 561. Thus far, however, the question has not arisen whether or to what extent the rule is applicable to short sales. By its terms, it is restricted to the sale of shares from lots of stock purchased at different times which can not be identified. Wherever, for one reason or another, the shares sold can be and by the evidence are identified with the lots purchased, there is no occasion to use the rule of article 58. By invoking the rule, therefore, in the present case, the respondent implies that the shares of Victor stock sold short are from lots purchased at different times and can not be identified.

---

[1] Represents ½ of cost of 1,000 shares purchased on November 4, 1927 for $42,475.00.

[2] Represents of cost of 1,000 shares purchased on January 9, 1928 for $57,425.00.

We think that the respondent's position can not be sustained. It loses sight of the nature of a short sale and treats it as an ordinary sale. But the essence of a short sale is that what is sold has not yet been acquired by the seller. Cf. *Provost* v. *United States*, 269 U. S. 443; *Cook* v. *Flagg*, 251 Fed. 5. A short sale of property already on hand is an anomaly. An instruction by a broker's customer to sell short puts into operation a machinery which is entirely inconsistent with a simple sale of shares already held in the customer's account. *Provost* v. *United States, supra.* While the specific question has not, so far as we have been able to ascertain, been determined, enough has been said in the extensive discussion of cognate questions to indicate at least a doubt whether a broker instructed by his customer to make a short sale is authorized without specific permission to consummate such sale by the use of the shares in the customer's long account. Clearly he could not do so before giving the customer a reasonable time and opportunity to make a profitable purchase to cover. *Campbell* v. *Wright*, 118 N. Y. 594; 23 N. E. 914; *Rosenthal* v. *Brown*, 247 N. Y. 479; 160 N. E. 921; Ingraham, J., in *In re Mills*, 139 App. Div. 54; 123 N. Y. S. 671.

In the present case the stipulation suggests that the broker was given a wide freedom in the use of petitioner's shares. The brokerage contracts are not in evidence and, hence, the extent of the broker's powers in this respect is not entirely clear. It would seem, however, that he has no right to close out the petitioner's long account by using the long shares to make an immediate delivery under a short sale. Even if the broker had the right to borrow the customer's long shares for delivery under his short sale, cf. *Jones* v. *DeRonde*, 255 N. Y. S. 505, this would be less than saying, as the respondent does, that the long shares were sold for the petitioner.

A short sale imports a subsequent covering purchase. It leaves open the accounts of both the customer and the broker. No profit or loss exists until by the covering purchase the obligation of the short sale is discharged. *Brown* v. *Carpenter*, 182 App. Div. 650; 168 N. Y. S. 921; see S–1179, 1 C. B. (1919) 60; I. T. 2187, IV–2 C. B. 25. It is in this respect unlike an ordinary sale. While some attributes are present in both transactions, the more important attributes of a short sale are those which entirely distinguish it from the ordinary sale.

While, therefore, it may be that article 58 is applicable on occasions to short sales, so, for instance, as to justify the use of a first in first out rule to successive unidentified short sales of the same class of stock, this would be quite different from applying the rule indiscriminately to a congeries of short sales and long purchases. The respondent's application of the rule to the facts here finds less support either in

law or administrative convenience than its application to stock bought by a single customer through several brokers. *Christian F. Leng*, 22 B. T. A. 149.

In our opinion, the gain or loss in respect of a short sale is to be ascertained by matching it against the covering purchase, and this requires that the respondent's determination be reversed. This is in accordance with the respondent's rulings, G. C. M. 7451, IX–I C. B. 81; G. C. M. 8426, IX–2 C. B. 92; and I. T. 2187, IV–2 C. B. 25.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH concurs in the result.

SEAWELL dissents.

LANSDON did not participate in the consideration of or decision in this proceeding.