JOHN A. SNYDER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49721.   Promulgated September 14, 1933.

*Henry M. Ward, Esq.*, and *Harry A. Fellows, Esq.*, for the petitioner.
*R. W. Wilson, Esq.*, and *W. W. Kerr, Esq.*, for the respondent.

OPINION.

ARUNDELL: The respondent's determination of a deficiency in income tax in the amount of $38,961.22 for the year 1928 arises out of his application of the rule of " first in, first out " to sales of stock made by petitioner in the taxable year.

The facts upon which the case was submitted are those alleged in the amended petition and admitted in the respondent's answer thereto, and those which it was stipulated the petitioner would testify to if present. For the purposes of this report the pertinent facts may be briefly summarized.

In 1928 and several prior years petitioner dealt in stock of the United Gas Improvement Co. He traded through two brokerage houses on margin and pyramided his purchases. Upon a decline in the market so that his margin fell below the required percentage the brokers reduced his debit balance by sufficient sales to make up the deficiency in the margin. Upon a rise in the market the paper profits were used to increase his holdings of the stock. By this method of operation the stock standing to petitioner's credit on the brokers' books increased during the year from 5,300 shares to 8,000 shares, an increase of 2,700 shares. At the same time his debit cash balance on the brokers' books increased from $501,865.59 to $932,822.67, an increase of $430,957.08. These changes were the result of sales by the brokers at various dates throughout the year of a total of 7,900 shares and the purchase of 10,600 shares for petitioner's account. Pur-

chases and sales affecting petitioner's account were entirely through the medium of street certificates handled by the brokers, who debited and credited petitioner's account to reflect the transactions, and at no time during the year did the brokers, on the one hand, or petitioner, on the other, deliver to each other actual stock certificates.

The substance of petitioner's testimony, offered by stipulation, was that in each case where a sale was made it was his intention to sell the last acquired stock first and shortly thereafter to buy back an equivalent amount in order to increase his margin and acquire additional shares of the stock.

In determining the deficiency the respondent applied to petitioner's stock transactions the method of computation prescribed by article 58 of Regulations 74, as follows:

When shares of stock in a corporation are sold from lots purchased at different dates and at different prices and the identity of the lots can not be determined, the stock sold shall be charged against the earliest purchases of such stock. The excess of the amount realized on the sale over the cost or other basis of the stock will constitute gain.

The applicability and validity of the above article of the regulations, commonly known as the rule of " first in, first out ", are the only questions presented for decision. The same petitioner was before us in a proceeding reported at 20 B.T.A. 778, contesting a deficiency arising out of similar transactions in the same stock in the year 1925. In that case we sustained the respondent's application of the rule in controversy here, and on appeal by the petitioner our decision was affirmed by the Circuit Court of Appeals, Third Circuit, in an opinion reported at 54 Fed. (2d) 57. In the opinion of the Board it was said that there was no evidence of " petitioner's intention to sell any designated stock." Evidently to meet this situation petitioner's testimony was given in this case to the effect that in each sale he intended to sell the most recently acquired stock. This, however, does not establish that the sales were made in that order, and we are unable to find that they were so made in view of the stipulated facts that there were no deliveries of stock certificates, and the transactions were entirely through the medium of street certificates which were not identified or in any way earmarked for petitioner's account. Consequently, the facts upon which we have to go here are in no way different (save as to amounts) from those in the previous case.

Petitioner's principal argument is that the regulation applied here is invalid, under the decision in *Heiner* v. *Donnan*, 285 U.S. 312, which was decided since the previous case involving this same taxpayer. The *Donnan* case dealt with a conclusive presumption; hence, it involved an entirely different question and is readily dis-

tinguishable from this case, in which the presumption is rebuttable. "A rebuttable presumption clearly is a rule of evidence" (*Heiner* v. *Donnan, supra*), and "casts upon the person against whom it is applied the duty of going forward with his evidence on the particular point to which the presumption relates." *Manley* v. *Georgia*, 279 U.S. 1. It does not estop the taxpayer from establishing the existence of a fact. Where the taxpayer identifies the stock traded in the presumption does not apply. *Howbert* v. *Penrose*, 38 Fed. (2d) 577; *Cleveland Trust Co., Executor*, 24 B.T.A. 132. The presumption announced in the regulations merely follows the rule that has been in effect at least since the decision in *Towne* v. *McElligott* (decided in 1921), 274 Fed. 960; hence, it cannot be said to work any hardship on the taxpayer, inasmuch as he had ample warning of the necessity of putting his accounts in shape to enable him to identify his purchases and sales.

*Decision will be entered for the respondent.*