JAMES CUNNINGHAM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARJORIE W. CUNNINGHAM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 52005, 52006.   Promulgated January 10, 1934.

*Henry Brach, C.P.A.*, for the petitioners.
*H. D. Thomas, Esq.*, for the respondent.

#### OPINION.

LEECH: These proceedings, formally consolidated, attack deficiencies in income tax for the calendar year 1928 proposed against James Cunningham and Marjorie W. Cunningham, petitioners, in the respective amounts of $7,744.26 and $1,567.35.

Petitioners were and are husband and wife. They maintained " long " security trading accounts with a broker, which were both conducted by petitioner James Cunningham. The purchases and sales in these accounts included hundreds of such transactions and were identical, but, so far as here material, involved only the following transactions in shares of Electric Bond & Share Corporation as to each petitioner:

October 31, 1928, bought 500 shares at a cost of $56,643.75.
December 6, 1928, sold 250 shares for $40,308.75.
December 7, 1928, bought 250 shares at a cost of $37,625.00.
December 10, 1928, sold 250 shares for $35,352.50.
December 13, 1928, bought 250 shares at a cost of $37,793.75.
December 12th and 13th, 1928, sold 250 shares for $37,802.50.
December 14, 1928, bought 250 shares at a cost of $36,712.50.
December 20, 1928, sold 250 shares for $38,958.75.
December 24, 1928, sold 250 shares for $39,927.50.
December 31, 1928, bought 250 shares at a cost of $43,312.50.
January 10, 1929, sold 150 shares for $26,719.00.
January 14, 1929, sold 100 shares for $18,071.00.

The last two sales disposed of all shares of Electric Bond & Share stock acquired by petitioners in 1928.

None of the above sales were ordered by petitioners, or either of them, as " short " sales, nor were any of such sales executed or recorded as " short " sales by petitioners' broker.

In determining the present deficiency under the Revenue Act of 1928, section 113 (a), here pertinent, respondent applied the "first in, first out" rule of article 58 of Regulations 74, which, within its purview, has been approved. *Snyder* v. *Commissioner*, 54 Fed. (2d) 57; affirming 20 B.T.A. 778; *Skinner* v. *Eaton*, 45 Fed. (2d) 568; certiorari denied, 283 U.S. 837. The profit on the sales made in 1928 was computed as follows:

| Date of sale | Shares sold | Selling price | Date of purchase | Cost | Profit |
|---|---|---|---|---|---|
| Dec. 6 | 250 | $40,308.75 | Oct. 31 | $28,321.87 | $11,986.88 |
| Dec. 10 | 250 | 35,352.50 | Oct. 31 | 28,321.88 | 7,030.62 |
| Dec. 12, 13 | 250 | 37,802.50 | Dec. 7 | 37,625.00 | 177.50 |
| Dec. 20 | 250 | 38,958.75 | Dec. 13 | 37,793.75 | 1,165.00 |
| Dec. 24 | 250 | 39,927.50 | Dec. 14 | 36,712.50 | 3,215.00 |
| Total | | 192,350.00 | | 168,775.00 | 23,575.00 |

Upon the above basis the 250 shares remaining in each account on December 31, 1928, were the 250 shares purchased on December 31, 1928, and had a cost of $43,312.50.

Petitioners contend that each intended at all times during 1928 to maintain a "long" position of 500 shares of Electric Bond & Share stock and that when the above sales were made they were not intended to be sales of the 500 shares held on October 31, 1928, but were intended to be "short" sales to be covered by purchases at a later date at a lower price. They maintain that the following computation should be used in determining the disputed tax:

| Date of sale | Shares sold | Selling price | Repurchase price | Date of repurchase | Profit or loss |
|---|---|---|---|---|---|
| Dec. 6 | 250 | $40,308.75 | $37,625.00 | Dec. 7 | $2,683.75 |
| Dec. 10 | 250 | 35,352.50 | 37,793.75 | Dec. 13 | [1] 2,441.25 |
| Dec. 12, 13 | 250 | 37,802.50 | 36,712.50 | Dec. 14 | 1,090.00 |
| Dec. 20 | 250 | 38,958.75 | 43,312.50 | Dec. 31 | [1] 4,353.75 |
| Total | | 152,422.50 | 155,443.75 | | [1] 3,021.25 |

[1] Loss.

On the basis of this contention the sale of 250 shares on December 24, 1928, was still open as a "short" sale on December 31, 1928, and the original 500 shares acquired on October 31, 1928, at a cost of $56,643.75 were still owned. According to this position it was not until 1929 that they decided to terminate their operations in Electric Bond & Share stock and consider their "long" position as being applied against sales made on December 24, 1928, and on January 10 and 14, 1929.

Petitioners suggest a "short" sale differs from a "long" sale only in the bookkeeping entries of the broker recording the transaction. We disagree. The essence of a "short" sale is that what is sold has

not yet been acquired by the seller. Thus the entire mechanics of a " short " sale are inconsistent with those employed in a sale of shares already held by the seller. Cf. *Provost* v. *United States*, 269 U.S. 443; *Cook* v. *Flagg*, 251 Fed. 5; *Robert W. Bingham*, 27 B.T.A. 186.

Petitioners base their position on what they intended. However, not only did neither of petitioners direct that the controverted sales be executed as " short " sales, but, so far as this record discloses, neither petitioner ever maintained a " short " account. Thus the fact is that the broker, unquestionably petitioners' agent who carried out the several questioned transactions, had not the semblance of authority to execute them as other than sales of stock, already held in petitioners' " long " accounts. Cf. *Robert W. Bingham*, *supra*, and cases cited therein.

In any event, we are concerned with what was actually done, not with what was intended. *United States* v. *Phellis*, 257 U.S. 156; *Western Maryland Ry. Co.* v. *Commissioner*, 33 Fed. (2d) 695. It is apparent from this record, and we so find, that when the questioned sales were made petitioners had in their " long " accounts shares of such stock in excess of that then sold; that the transactions here involved were sales of those securities already held by petitioners, not " short " sales; and that the lots of securities so sold were not identifiable. The respondent is affirmed.

*Judgment will be entered for the respondent.*