## DAVID STEWART, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18309. Promulgated September 27, 1929.

*J. Britain Winter, Esq.,* for the petitioner.
*Harold Allen, Esq.,* for the respondent.

OPINION.

MURDOCK: The petitioner claims he sustained a loss of $3,274.63 upon the sale by him of the Iowa Central and the Minneapolis & St. Louis bonds for the Auxiliary Realty Co. The Commissioner, in his deficiency notice, does not refer to this loss, but merely states that the report of an internal revenue agent has been reviewed and approved. In this report an alleged loss of $3,195 was disallowed. It related to the bonds and the transactions now in question. The report contained a statement that the transaction appeared to be colorable, for the reason that the company was owned entirely by the taxpayer, was used by him for a convenience, and was not authorized to deal or speculate in stocks or bonds. Counsel for the respondent made no statement before the taking of testimony, but from his statements during the course of the trial and his argument and brief thereafter, it appears that his principal reason for objecting to the allowance of the alleged loss deduction is that the transaction was colorable, due to the petitioner's ownership of stock in the corporation and his control of the corporation. The petitioner offered proof of the fact that the corporation was authorized to buy and sell bonds, that it was a corporation, and that the petitioner owned 51 per cent of its stock in his own name and held the remainder as trustee for beneficiaries whose identity is not disclosed by the record. He admitted that he had used the Auxiliary Realty Co. for his own convenience and for the convenience of his business, and stated that that was the reason he had had it incorporated many years ago. Neither the respondent nor any of those acting under him have ever contended that the

price received by the petitioner was other than the fair market value of the bonds at the time this transaction took place. The petitioner offered no proof on this point and, under the circumstances, we will not question the genuineness of the transaction merely because we do know how the amount of $1,515 compared with the fair market value of these bonds on November 30, 1923.

Ordinarily, where an individual sells securities to a corporation at less than the cost of the securities, the sale establishes the amount of the individual's loss for income-tax purposes. It has been shown in this case that the petitioner sold his securities to a corporation for less than those securities cost him. Why then should he not have a deduction for a loss? The respondent says he should not have it because the transaction was colorable, but what was there about the transaction to indicate that it was not genuine? The petitioner was the only witness and he testified quite frankly in regard to all matters about which opposing counsel questioned him. He stated that he owned 51 per cent of the stock of the corporation in his own name and that he owned the remainder of the stock as trustee, but neither counsel inquired as to who the beneficiaries of the trust were. The petitioner admitted that he did what he did in order to take a loss on his income-tax return, but of course it is not reprehensible to take lawful steps which will entitle one to a loss on one's income-tax return. It may well be that the petitioner was in a position, due to his control of the corporation, to commit a fraud on the Government in order to take an unsustained loss on securities, but there is no evidence to indicate that any of his acts lack genuineness. We therefore hold that the Commissioner erred in disallowing a loss in the amount of $3,195.

On the second issue, our judgment is for the respondent who determined that the petitioner sold the first two lots of Market Street Railway bonds which he bought. The profit on these bonds should be computed as follows:

| | | |
|---|---:|---:|
| Sale price | | $9, 575. 97 |
| Cost | $3, 624. 47 | |
| Cost | 3, 624. 48 | |
| | | 7, 248. 95 |
| Profit | | 2, 327. 02 |

The petitioner contends that he did not sell the first two lots of these bonds but, on the contrary, sold the last lot purchased by him and one of the other two lots. However, he failed to prove that such was the case. As a matter of fact, we do not know what particular bonds he sold and perhaps no one knows, since the petitioner never had possession of any particular bonds and there is nothing to show what bonds the broker held or what bonds the broker sold.

In the case of sales of stock which are not identified, we have approved the Commissioner's determination that it will be deemed that the vendor first sells or disposes of those shares which he first acquired. *George W. Megeath*, 5 B. T. A. 1274. This same rule has been laid down by the District Court for the Southern District of New York in *Towne* v. *McElligot*, 274 Fed. 960, and more recently by the United States District Court for the District of Connecticut in *Executors of Skinner* v. *Eaton*, 34 Fed. (2d) 576. We think that for the sake of uniformity and for lack of a better rule, the same rule should apply here in regard to the sale of unidentified bonds.

*Judgment will be entered under Rule 50.*