MARY E. HORNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

VAUGHAN HORNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. S. HORNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 53128–53130. Promulgated June 13, 1933.

*Thos. D. McCloskey, Esq.*, and *Fred C. Houston, Esq.*, for the petitioners.
*John H. Pigg, Esq.*, for the respondent.

---

OPINION.

GOODRICH: Deficiencies in income tax against Mary E. Horner for the year 1927 amounting to $4,190.39; against W. S. Horner for 1928 of $6,193.95; and against Vaughan Horner for 1928 of $1,762.05, are contested in these proceedings which, upon motion, were consolidated. Most of the material facts were stipulated and, although considerable testimony was put in also, we need not, for the purposes of this report, set out a detailed recital of facts. There is no dispute of fact as to the acts done by petitioners; the dispute is as to the effect of those acts, and the whole issue for our determination is, Which stock was disposed of by the several petitioners in the sales giving rise to these deficiencies; old stock, previously owned, or new stock, to be purchased in the future?

Prior to 1927 these petitioners, who are residents of Pittsburgh, Pennsylvania, each owned, and had in his custody, certain shares of stock of the American Rolling Mill Co. In December of that year the company advised its stockholders that it would issue rights to subscribe to additional stock, on the basis of one share of new stock for each six shares of old stock then held, at $75 a share. The rights were issued on or about January 10, 1928, and expired at the end of that month, when the certificates were to be delivered. Each of petitioners subscribed for new stock under the rights, but before new stock was issued, believing that the market was then more favorable than it would be later, each sold, through a broker, and upon the Exchange, stock of this company. Mary E. Horner sold 500 shares in December 1927; Vaughan Horner sold 300 shares, and W. S. Horner sold 1,550 shares in January 1928. It appears beyond dispute that these sales were made by petitioners in anticipation of the exercise by them of their rights to subscribe to new stock, and that it was their intention and purpose to sell the stock. However, when they ordered their broker to make these sales they each delivered to him certificates representing an equal amount of the old stock then owned and held by them. These shares were sold by the broker; they were not returned to petitioners. On the sales memoranda sent to them by the broker, petitioners, immediately upon receipt, caused to be written: " Sold on account of rights to subscribe for stock at $75.00 a share. Profit to be calculated on this basis." On their books of account reflecting these sales petitioners made entries to the same effect, for instance: " Stock sold was against that received February 1, 1928 at $75.00."

Relying chiefly upon *Howbert* v. *Penrose*, 38 Fed. (2d) 577, petitioners contend that the real transaction here was, in accordance with

their intention, the sale of the new stock to be thereafter acquired by them through the exercise of their rights to subscribe, and, in reporting on their returns the profit derived from the sales, computed it on the cost basis of $75 a share. Respondent maintains that, regardless of their intention, what petitioners actually did was to sell old stock and in determining the deficiencies here in controversy he computed the profit from the sales upon the cost basis of the old stock, which is less than $75 a share. Moreover, he determined that the identity of the lots of stock sold could be ascertained and therefore, in computing the profit, used as the basis in each sale the cost of the particular lot of stock sold. Petitioners do not deny that respondent has properly identified the lots delivered to the broker, but contend that they did not represent the stock sold.

We sustain respondent. Upon analysis, we think the case of *Howbert* v. *Penrose, supra*, relied on by petitioners, supports our view. In that case the stockholders decided to sell shares acquired by him after 1913, gave an order to his broker to sell a certain amount of the stock and ordered the depositary having custody of all his stock to make delivery to the broker. The certificates delivered represented, for the most part, shares purchased prior to 1913. In affirming, because it was supported by the evidence and could not be disturbed, the finding of the trial court to the effect that the stockholder intended to and did sell stock acquired after 1913, the court said:

In our opinion, proof of the certificates delivered does not conclusively determine what transaction did in fact take place. It is evidence, but not exclusive evidence. So it is of the question of intent of the seller, a point much labored at the trial and here; it is some evidence as to what was done, but not conclusive. The ultimate question is, what was done?

Applying that test here, it seems clear that what petitioners did was to make sales of certain shares of their old stock. In the *Howbert* case, the taxpayer owned all the stock; he had it all within his control, and the confusion arose only in the matter of the specific certificates delivered. As the court points out, there was no restriction on his choice of which shares he should sell. Here, petitioners did not yet own the shares they purported to sell; indeed, with respect to a part of it, they had not yet received even the rights to subscribe under which they expected to acquire the stock they purported to sell. Perhaps they could have sold those rights, even in anticipation of their issuance, but they did not. Perhaps they could have ordered their broker to make a short sale of the new stock for them, making a deposit with the broker, either of cash or of old stock to the value of the amount required, and later making delivery to him of the new stock to cover, but that they did not do. Each of these petitioners, purporting to sell something which he did not yet own, and saying to himself (but not to the

broker or the purchaser), " I am now selling stock which I shall buy next month for $75 a share ", delivered to the broker certificates representing shares which he then owned. But petitioners' bare intention to do something else does not alter the fact of what was done. They were old shares which were delivered; they were old shares which were sold, and for which petitioners received payment, and we regard those sales as completed transactions—ordinary sales of stock which required neither a later covering purchase, a delay of the recognition of gain arising from them, nor the use of a basis other than the cost of the property sold in computing that gain. It is upon the basis of what actually occurred that respondent has determined his deficiencies; therefore, we sustain him. Cf. *Towne* v. *McElligott*, 274 Fed. 960; *Estate of Richard B. Turner*, 26 B.T.A. 1204; *Robert W. Bingham*, 27 B.T.A. 186.

*Judgment will be entered for the respondent.*