CHRISTIAN W. VON GUNTEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61278. Promulgated July 18, 1933.

*J. T. Kennedy, Esq.*, for the petitioner.
*F. A. Surine, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency in income taxes for the year 1929 in the amount of $2,754.25. The assignment of error is as follows:

In determining the profit on the sale of corporate stock by the petitioner, the Commissioner erred in the cost basis he adopted, and in denying to petitioner any election respecting the lots from which said stock should have been deemed to have been sold, or any election to use the average share cost of said stock as the basis for determining said profit.

The stipulated facts may be summarized as follows:

The petitioner is an individual. He held common stock in the Averill Dairy Co. at the beginning of 1929. On or about June 6, 1929, pursuant to a reorganization, the Borden Co. exchanged some of its capital stock for all of the capital stock of the Averill Dairy Co. Thus the petitioner received 8⅓ shares of Borden stock for each share of Averill stock which he had owned, or 3,750 shares of Borden for 450 shares of Averill stock. The following table shows certain details relating to the acquisition of the 450 shares of Averill stock:

| Number of shares | Acquired | Manner acquired | Cost |
|---|---|---|---|
| 50 | October 31, 1917 | Purchase | $5,000.00 |
| 150 | August 2, 1920 | Stock dividend | 0 |
| 25 | December 15, 1922 | Stock dividend | 0 |
| 225 | Total | | 5,000.00 |
| 75 | April 19, 1927 | Purchase | 33,333.33 |
| 150 | January 8, 1929 | Purchase | 67,500.00 |
| 450 | Total | | 105,833.33 |

He held separate stock certificates for each lot shown above. In 1929 he sold 800 of his 3,750 shares of Borden Co. stock for $62,147.50. The Commissioner in determining the deficiency computed the profit on the sale of the 800 shares by using as a basis for gain thereon a cost of $2,133.33, determined in this way: The total cost of the earliest block of 50 shares of Averill stock purchased was divided by 225, the number of shares to which this block grew by stock dividends; the result was divided by 8⅓ to get the cost of one share of Borden stock; and the result thus obtained was multiplied by 800. In this way the Commissioner computed a profit of $60,-014.17. The petitioner in his return deducted $22,576.76 as the cost of the 800 shares sold. This cost was based upon the average cost of each share of Averill stock.

The question is, What basis should be used? The respondent has not referred us to any applicable regulation. He cites section 113 (a) (9) of the Revenue Act of 1928 and Regulations 74, article 600, promulgated pursuant to authority contained in that subsection. The subsection relates only to stock or securities distributed to a taxpayer in connection with a transaction described in section 112 (g). Section 112 (g) covers an entirely different kind of distribution from the one involved in the present case. It deals with a distribution of shares to a former shareholder " without the surrender by such shareholder " of his old shares. Here the petitioner surrendered his Averill shares and received only Borden shares. Thus the respondent finds no support in the provisions of the statute or the regulations upon which he relies.

Nor is he aided by the rule of " first in, first out." See Regulations 74, article 58 and similar provisions of earlier regulations. The courts and this Board have approved of this rule when properly applied because some simple and uniform rule was needed and the Commissioner by his regulations supplied one. Cf. *Burdett Stryker*, 21 B.T.A. 561; *David Stewart*, 17 B.T.A. 604; *Snyder* v. *Commissioner*, 54 Fed. (2d) 57, affirming *John A. Snyder*, 20 B.T.A. 778. The situation to which the regulations apply is where there has been a sale " from lots purchased at different times and at different prices and the identity of the lots can not be determined." In such cases the regulations charge the earliest sales against the earliest purchases. There is no analogy between cases expressly covered by those regulations and the present case, which is not covered by any regulation. Here the petitioner sold Borden stock. He had acquired all of his Borden stock at one time. Thus the sale was not made " from lots purchased at different times and at different prices."

Furthermore, there is no need for any rule in a case like this except the rule that the basis for all shares acquired at one time shall

be prorated equally among the shares. The petitioner disposed of all of his Averill stock at one time by exchanging it for Borden stock. This exchange was "in pursuance of the plan of reorganization" and section 112 (b) (3) expressly provides that no gain or loss shall be recognized in such an exchange. Were it not for this provision the general rule of section 112 (a) would apply. That rule is that "upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized." The gain or loss upon that exchange would have been the difference between the total cost of the Averill stock and the fair market value of the Borden stock at the date received. The basis for subsequent gain or loss on the Borden stock would have been its fair market value at the time received. This basis would have been allocated pro rata to each Borden share. But because of other provisions no gain or loss was recognized on that exchange. Consequently the basis for subsequent gain or loss on the Borden stock "shall be the same as in the case of the property exchanged." Sec. 113 (a) (6). This means in the present case that the basis for the 3,750 shares of Borden stock shall be $105,833.33, the cost of the 450 shares of Averill stock to the petitioner. Since all of the Borden shares were acquired at one time, and since collectively they have a basis of $105,833.33, each share has a basis of 1/3750 of $105,833.33, or $28.2222. The basis for 800 shares would be $22,577.76. We can see no justification for holding that these 800 shares bore any relation to any particular Averill shares or for holding that they should be allotted only that portion of the cost of the Averill shares which represented the cost of the earliest shares purchased.

*Decision will be entered under Rule 50.*