MICKLER HOLDING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60676. Promulgated November 7, 1933.

*F. H. Stinchfield, Esq.,* for the petitioner.
*T. M. Mather, Esq.,* for the respondent.

OPINION.

GOODRICH: Respondent determined a deficiency of $7,899.36 in income tax for the fiscal year ended July 31, 1929. Petitioner, a

Minnesota corporation, having its principal office at Minneapolis, admits liability for $70.04 of this deficiency, but contends the remainder was determined in error. At trial, counsel presented a stipulation of facts which we adopt as our findings but need not repeat here in full for an understanding of the issue. The controversy relates to the amount of profit derived by petitioner upon sales of securities during the period before us. The question is, Did petitioner sell the stock most recently acquired by its transferors? Petitioner claims it did, and that, consequently, the cost in the hands of its transferors must be used as the basis in determining the gain derived from the sales. But respondent has determined and maintains that the stock sold could not be identified, and that, consequently, applying the rule of "first in, first out," the cost of the stock first acquired by petitioner's transferors is to be used as the basis in determining the profit.

Petitioner was organized in 1928 by four related individuals to whom all its stock was issued in exchange for property. The parties agree that this transaction was one upon which neither gain nor loss is to be recognized and that the basis to be used by the corporation in determining gain or loss upon its subsequent disposition of the property is the cost thereof to the individual transferors.

The bulk of the property so transferred to petitioner consisted of 11,780 shares of the common capital stock of the F. W. Woolworth Co., which had been acquired by the several transferors over a period of years through purchases and stock dividends. The exact number of shares transferred to petitioner by each individual does not appear, nor can it be ascertained from their records which particular certificates represented shares acquired by them in any particular purchase or dividend receipt, as from time to time during the period they owned the stock they had sent in various certificates for reissue in desired amounts, and kept no account of the identity of the shares so represented. After the transfer, petitioner sent in to the Woolworth Co. the certificates received from the individuals, with instructions to reissue the stock to the Mickler Co. in stated convenient amounts. No instructions were given to issue any new certificates as representing any particular shares or certificates surrendered, nor did petitioner maintain records sufficient to control the identity of the shares or certificates, either when received in exchange for its own stock or when sent in to the Woolworth Co. for reissue.

In November 1928 petitioner's stockholders adopted a resolution in part as follows:

Upon motion duly made and seconded it was decided to sell 5,000 shares of the most recently acquired common stock of the F. W. Woolworth Company at $215.00 per share, or better.

Thereafter, and within the period now before us, petitioner sold 5,000 shares of that stock for a total of $1,092,250. In reporting its profit on the sale petitioner used $156,558 as the cost of the shares sold, which, it is agreed, is the cost of the 5,000 shares last acquired by petitioner's transferors. Respondent, however, has used $87,980 as the cost, which, it is agreed, is the cost of the 5,000 shares first acquired by petitioner's transferors. From respondent's use of the lower cost, with a resultant increase in profit, arises the deficiency in controversy.

Article 58 of Regulations 74, upon authority of which respondent made his determination, and the same rule as contained in corresponding provisions of regulations promulgated under earlier revenue acts, has been adjudged reasonable and necessary and has been given the effect of law. *Skinner* v. *Eaton*, 45 Fed. (2d) 568; certiorari denied, 283 U.S. 837; *Snyder* v. *Commissioner*, 54 Fed. (2d) 57 (affirming 20 B.T.A. 778); *Robert W. Bingham*, 27 B.T.A. 186. Apparently, the parties agree that it is here controlling unless the shares sold by petitioner may be identified and their cost determined. We accept that view in considering the case, but point out that, in fact, petitioner acquired all its Woolworth shares in a single transaction and therefore article 58 perhaps is not applicable, even though the basis for the shares when owned by petitioner is the same as when in the hands of the transferors, under section 113 (a) (8) of the Revenue Act of 1928. We suggest the question but do not decide it, preferring to dispose of the case upon the issue presented.

We are willing to assume for the purposes of this case, though we do not so decide, that, as petitioner contends, there may be a distinction between those cases where the shares involved were dealt in through brokers upon margin account and the case at bar where petitioner had complete ownership of the shares and had in its possession the several certificates representing them. We can agree that, as petitioner asserts, the identity of the mere certificates representing shares sold is not controlling and that the shares here involved were specifically owned and possessed by petitioner. We will agree, *arguendo*, with petitioner's further assertion that it had the right to choose which shares it should sell. But we cannot agree to its conclusion, wherein it relies chiefly upon *Howbert* v. *Penrose*, 38 Fed. (2d) 577, that the resolution of its stockholders directing to be sold the 5,000 shares last acquired (by its transferors) effected an actual sale of such shares and an identification of the shares sold with any lot purchased. In our opinion, the decision in the *Howbert* case does not mean, as petitioner contends it does, that stock sold may be identified sufficiently to escape the application of the " first in, first out " rule by a mere mental operation or a declared inten-

tion to make sale of shares acquired at any particular time, without an ascertainment of identity based upon fact. Such an interpretation would conflict with the later decisions in *Skinner* v. *Eaton, supra,* and *Snyder* v. *Commissioner, supra.* See also *Burdett Stryker,* 21 B.T.A. 561. Simply declaring that certain shares were acquired at a particular time neither proves nor alters the facts of the purchase, nor is any more accomplished by merely saying that shares sold were from those acquired at a particular time, if actual identification be lacking. Words do not change fish to fowl, nor do they, alone, serve to effect the positive identification required to avoid the rule here applied.

As said in *Robert W. Bingham, supra:*

> Wherever, for one reason or another, the shares sold can be, and, by the evidence, are identified with the lots purchased, there is no occasion to use the rule of article 58.

Petitioner says upon brief: " But the important thing is  *  *  * adequate records as to the price paid and the price received for shares of stock." To that we add that these necessary factors must be coupled to the shares involved in any particular transaction. That, petitioner has failed to do.

We cannot agree that the decision in the *Howbert* case goes so far as petitioner would have it. There the trial court found as a fact, from evidence disclosed by books of account and private memoranda, that shares sold were identified as shares bought at a particular time and certain price. The appellate court did not disturb that finding because it was supported by the evidence, but it laid as a test not the identity of the certificates delivered, nor the intention of the seller, but *what was done. Mary E. Horner,* 28 B.T.A. 360.

Here, under instructions from the stockholders to sell the 5,000 shares last acquired (by petitioner's transferors), petitioner sold that amount of stock. It claims it sold those particular shares because it was instructed, and therefore intended to do so. Yet it is plain that petitioner could not identify those shares as to date and price of acquisition, either from its records or from those of its transferors; it could not tell one share from another. It could not couple to the price received the record of the price paid for the shares sold; nor otherwise identify the shares sold with the lots purchased. Consequently, it could not itself know that the shares sold were those last purchased, nor prove to us that they were. The rule of " first in, first out " was properly applied in this transaction.

*Judgment will be entered for the respondent.*