OLIVE HUME OLIVER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65640.     Promulgated July 31, 1934.

*S. Leo Ruslander, Esq.*, for the petitioner.
*B. U. Steele, Esq.*, for the respondent.

## OPINION.

MATTHEWS: The question involved is the basis to be used in computing gain or loss from sales of the stock and rights of the American Radiator & Standard Sanitary Corporation, which were sold in 1929. The pertinent provisions of the Revenue Act of 1928, which is here applicable, are set forth in the margin.[1] The stock and rights

[1] SEC. 111. (a) *Computation of gain or loss.*—Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 113, and the loss shall be the excess of such basis over the amount realized.

  *       *       *       *       *       *       *

(c) *Amount realized.*—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

(d) *Recognition of gain or loss.*—In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purposes of this title, shall be determined under the provisions of section 112.

  *       *       *       *       *       *       *

SEC. 112. (a) *General Rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) *Exchanges solely in kind.*—

  *       *       *       *       *       *       *

sold were acquired in 1929 upon an exchange of Standard Sanitary stock for stock of the American Radiator & Standard Sanitary Corporation, upon a statutory reorganization. The exchange, therefore, was a nontaxable transaction (sec. 112 (b) (3)) and the basis of the stock and rights received is the cost of the Standard Sanitary stock exchanged. Sec. 113 (a) (6).

The shares of Standard Sanitary stock exchanged were acquired in March 1928 in a three-for-one exchange of stock previously acquired by gift and stock dividend. Under the provisions of section 112 (b) (2), no gain or loss was recognized on the exchange in March 1928, and the basis of the stock received is the same as in the case of the stock exchanged. Sec. 113 (a) (6).

The stock exchanged in March 1928 consisted of the 5,000 shares received as a gift in 1923, the 1,250 shares received as a stock dividend in February 1925, and the 100 shares received as a gift in June 1925. The stock dividend, not being taxable when it was received, takes a pro rata portion of the cost of the stock with respect to which it was distributed. Therefore, the basis of the stock exchanged in 1928 was the basis of the stock received by gift and this basis is the same as it would be in the hands of the donor. Sec. 113 (a) (2).

---

(2) STOCK FOR STOCK OF SAME CORPORATION.—No gain or loss shall be recognized if common stock in a corporation is exchanged solely for common stock in the same corporation, or if preferred stock in a corporation is exchanged solely for preferred stock in the same corporation.

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

SEC. 113. (a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(2) GIFT AFTER DECEMBER 31, 1920.—If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift. If the facts necessary to determine such basis are unknown to the donee, the Commissioner shall, if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof. If the Commissioner finds it impossible to obtain such facts, the basis shall be the fair market value of such property as found by the Commissioner as of the date or approximate date at which, according to the best information that the Commissioner is able to obtain, such property was acquired by such donor or last preceding owner;

\* \* \* \* \* \* \*

(6) TAX-FREE EXCHANGES GENERALLY.—If the property was acquired upon an exchange described in section 112(b) to (e), inclusive, the basis shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. If the property so acquired consisted in part of the type of property permitted by section 112(b) to be received without the recognition of gain or loss, and in part of other property, the basis provided in this paragraph shall be allocated between the properties (other than money) received, and for the purpose of the allocation there shall be assigned to such other property an amount equivalent to its fair market value at the date of the exchange. This paragraph shall not apply to property acquired by a corporation by the issuance of its stock or securities as the consideration in whole or in part for the transfer of the property to it.

\* \* \* \* \* \* \*

There are no records of the deceased husband available to show the actual cost of the Standard Sanitary Manufacturing Co. stock purchased after March 1, 1913. In determining the cost of the shares purchased after March 1, 1913, and through October 1919, and of the 100 shares given to his wife on June 30, 1925, respondent used the market quotations on the Pittsburgh and Louisville exchanges on the dates nearest the dates of purchase. Petitioner accepted these values as representing cost of the lots purchased on those dates and offered in evidence the market quotations of the stock on the date nearest each purchase made subsequent to October 1919, as the cost of the stock purchased on such dates. The stock was traded in on the Pittsburgh exchange and the quotations offered were the prices at which the stock sold. In the absence of evidence as to actual cost to petitioner's husband, such values represent the cost of the stock to petitioner's husband. Sec. 113 (a)(2), and also sec. 202 (a)(2), Revenue Act of 1921.

The 100 shares given to petitioner by her husband in June 1925 cost him $10,150. The 5,000 shares given to petitioner by her husband were acquired by him in February 1923, upon an exchange of his then holdings of 2,948 shares of $100 par value stock for 11,792 shares of $25 par value stock. The cost to Oliver of the 2,948 shares was $249,573. The question is, what was the basis to Oliver of the 5,000 shares given to petitioner?

The petitioner contends that the cost to Oliver of the 2,948 shares of stock exchanged, $249,573, should be averaged over the 11,792 shares received on the exchange and that this will give the basis of each of the 5,000 shares received by gift. This method would give $105,823 as the basis of the 5,000 shares. Petitioner cites *Christian W. Von Gunten*, 28 B.T.A. 702, as authority for her contention.

Respondent contends that the first in, first out rule of article 58 of Regulations 74 is applicable. In applying this rule, he took the purchases made by Oliver through October 1919 as being the first five lots purchased, which, when increased by the 100 percent and 40 percent stock dividends and the four-for-one exchange in 1923, amounted to 40 shares over 5,000. He eliminated the 40 shares and the cost attributable thereto from lot 5 and arrived at the number of shares in the several lots and their cost as follows:

| | Shares | Cost |
|---|---|---|
| Lot no. 1 | 1,120 | $14,698.00 |
| Lot no. 2 | 560 | 7,000.00 |
| Lot no. 3 | 728 | 9,750.00 |
| Lot no. 4 | 560 | 7,750.00 |
| Lot no. 5 | 2,032 | 30,842.86 |
| Total | 5,000 | 70,040.86 |

He then computed the number of shares in each lot after the stock dividend of February 1925, and the three-for-one exchange in March 1928. He next computed the number of shares of American Radiator stock at the rate of 1.09043 to which the number of Standard Sanitary shares in each lot would be equivalent; eliminated certain portions of the fractional share in each lot; allocated the cost of the several lots of the Standard stock to the American Radiator stock and rights to which it was equivalent; and determined that the 663 shares of the American Radiator stock sold were part of lot No. 1, acquired by Oliver prior to March 1, 1913, at a cost of $14,698. He computed that lot No. 1 was equivalent to 4,579¾ shares of American Radiator stock with a cost of $14,012.98 after eliminating part of the fractional share, and the cost allocable to the rights, or $3.05977 per share. He used this figure as the basis of each of the 663 shares sold in determining the amount of the gain.

In *Christian W. Von Gunten, supra*, we held that upon a reorganization the cost of the stock exchanged is the basis of the stock received and must be allocated equally to all the shares received. That case involved only one exchange, that upon reorganization. Respondent had sought to apply the first in, first out rule of article 58 of Regulations 74 in determining the gain on the sale of some of the stock received upon reorganization. With respect to this we said:

* * * The courts and this Board have approved of this rule when properly applied because some simple and uniform rule was needed and the Commissioner by his regulations supplied one. Cf. *Burdett Stryker*, 21 B.T.A. 561; *David Stewart*, 17 B.T.A. 604; *Snyder* v. *Commissioner*, 54 Fed. (2d) 57, affirming *John A. Snyder*, 20 B.T.A. 778. The situation to which the regulations apply is where there has been a sale "from lots purchased at different times and at different prices and the identity of the lots can not be determined." In such cases the regulations charge the earliest sales against the earliest purchases. There is no analogy between cases expressly covered by those regulations and the present case, which is not covered by any regulation. Here the petitioner sold Borden stock. He had acquired all of his Borden stock at one time. Thus the sale was not made "from lots purchased at different times and at different prices."

Furthermore, there is no need for any rule in a case like this except the rule that the basis for all shares acquired at one time shall be prorated equally among the shares. The petitioner disposed of all of his Averill stock at one time by exchanging it for Borden stock. This exchange was "in pursuance of the plan of reorganization" and section 112(b)(3) expressly provides that no gain or loss shall be recognized in such an exchange. Were it not for this provision the general rule of section 112(a) would apply. That rule is that "upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized." The gain or loss upon that exchange would have been the difference between the total cost of the Averill stock and the fair market value of the Borden stock at the date received. The basis for subsequent gain or loss on the Borden stock

would have been its fair market value at the time received. This basis would have been allocated pro rata to each Borden share. But because of other provisions no gain or loss was recognized on that exchange. Consequently the basis for subsequent gain or loss on the Borden stock "shall be the same as in the case of the property exchanged." Sec. 113(a)(6). * * *

Under the authority of the above case, the respondent was wrong in attempting to allocate the 663 shares of American Radiator stock sold to any particular lot of shares exchanged. That case, however, does not cover such exchanges as we have in the instant case in the four-for-one exchange in 1923, and the three-for-one exchange in 1928. However, the statute itself specifically covers such an exchange as was made in 1928, section 112 (b)(2), and the reasoning of the opinion applies with equal force to such an exchange.

The first in, first out rule was adopted as a rule of convenience, in the absence of clear evidence as to the identity of lots sold and their cost. When all lots purchased and acquired by stock dividend distributions are exchanged for new shares of a different par value, the cost of all of the shares exchanged becomes the basis of the total shares received. The shares received are one lot acquired at the same time, whether the number of shares acquired is represented by one or more certificates. Hence, there is no necessity for such a rule. The question here involved was suggested in *Mickler Holding Co.*, 29 B.T.A. 300, but was not decided.

The rule does not in terms apply to a sale of stock acquired by a nontaxable exchange or by gift, but only to stock " purchased " at different times and at different prices.

We are of the opinion that the rule does not apply to property received on any nontaxable exchange. The rule first appeared as paragraph 60 of Regulations 33, Revised, issued under the Revenue Acts of 1916 and 1917. It has been continued in all subsequent regulations in substantially the same form. It has legislative sanction, therefore, but this sanction does not go beyond the literal terms thereof.

At the time it was first adopted the basis of property acquired by gift was the fair market value at the date of the gift. An exchange of property for other property under the Revenue Acts of 1913, 1916, and 1917 was held to result in gain or loss if the fair market value of the property received was greater or less than the cost of the property exchanged. This ruling was included in the Revenue Act of 1918 in section 202 (b), which provided, " when property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any." This section also provided that in the case of a reorganization no

gain or loss was deemed to occur where the stock or securities received were of no greater aggregate par or face value than the stock exchanged, but that if the stock received was of a greater aggregate par or face value, a like amount of par or face value should be treated as taking the place of the stock or securities exchanged, and the amount of excess in par or face value must be treated as a gain to the extent that the fair market value of the new stock or securities was greater than the cost of the stock or securities exchanged.

In the Revenue Act of 1921 section 202 was considerably enlarged. The provisions with respect to reorganization were changed to provide that no gain or loss would result even though the securities received had a greater aggregate par or face value and provisions covering other nontaxable exchanges were added. This section also for the first time carried the provision that property acquired by gift, after December 31, 1920, should take the donor's basis. Section 202 (c) (1), (2), and (d) (1) of the 1921 Act, which relates to exchanges, provides:

(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—

(1) When any such property held for investment, or for productive use in trade or business (not including stock in trade or other property held primarily for sale), is exchanged for property of a like kind or use;

(2) When in the reorganization of one or more corporations a person receives in place of any stock or securities owned by him, stock or securities in a corporation a party to or resulting from such reorganization. The word "reorganization," as used in this paragraph, includes a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or of substantially all the properties of another corporation), recapitalization, or mere change in identity, form, or place of organization of a corporation (however effected) ; * * *

*   *   *   *   *   *   *

(d) (1) Where property is exchanged for other property and no gain or loss is recognized under the provisions of subdivision (c), the property received shall, for the purposes of this section, be treated as taking the place of the property exchanged therefor, except as provided in subdivision (e).

Subdivision (e) has no application here.

With respect to these provisions the Senate Finance Committee report on the bill stated:

Section 202 (subdivision c) provides new rules for those exchanges or "trades" in which, although a technical "gain" may be realized under the present law, the taxpayer actually realizes no cash profit.

Under existing law "when property is exchanged for other property, the property received in exchange shall, for the purpose of determining gain or

loss, be treated as the equivalent of cash to the amount of its fair market value, if any * * *." Probably no part of the present income tax law has been productive of so much uncertainty or has more seriously interfered with necessary business readjustments. The existing law makes a presumption in favor of taxation. The proposed act modifies that presumption by providing that in the case of an exchange of property for property no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value, and specifies in addition certain classes of exchanges on which no gain or loss is recognized even if the property received in exchange has a readily realizable market value. These classes comprise the cases where productive property (other than stock in trade or property held primarily for sale) used in a trade or business is exchanged for property of a like kind or use; where in any corporate reorganization or readjustment stock or securities are exchanged for stock or securities of a corporation which is a party to or results from such reorganization; and where an individual or individuals transfer property to a corporation and after such transfer are in control of such corporation.

\* \* \* \* \* \* \*

Proper safeguards are found in subdivision (d), which provides that where property is exchanged for other property or where property is involuntarily converted into cash and the proceeds of such conversion are used to replace the property converted, or where a wash sale is not recognized, the property received in exchange shall be treated as taking the place of the original property.

Similar comments were made in the report of the Ways and Means Committee of the House.

This same report states, as the reason for incorporating into the 1921 Act the provision that property received by gift after December 31, 1920, shall take the same basis as it had in the hands of the donor, that the previous rule had been subjected to abuse by the owner of property transferring it to his wife or relatives, who then sold it at the increased value without taxable results.

Paragraph (1) of subdivision (c) of section 202 was amended March 4, 1923, to take effect January 1, 1923, to read as follows:

When any such property held for investment or for productive use in trade or business (not including stock-in-trade or other property held primarily for sale, and in the case of property held for investment not including stock, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest), is exchanged for property of a like kind or use.

The provisions of section 202 (c) (2), as amended, were carried into the Revenue Act of 1924 and appear in section 203 (b) (1) with this added provision:

\* \* \* or if common stock in a corporation is exchanged solely for common stock in the same corporation, or if preferred stock in a corporation is exchanged solely for preferred stock in the same corporation.

To increase the number of shares of a corporation solely by decreasing the par value of the shares is not a " recapitalization " and

does not, therefore, constitute a reorganization within the meaning of the statute. Congress evidently had in mind, in including the above quoted provision in the Revenue Act of 1924, just such exchanges of stock for stock as we have in the instant case. The provision has been continued in all the later acts. Sec. 203 (b) (1), Revenue Act of 1926; sec. 112 (b) (2), Revenue Acts of 1928, 1932, and 1934.

This provision apparently embodied in the law a ruling which the Commissioner had been following, although such ruling does not appear in his regulations. It does appear, however, in T.B.R. 39, which was published in Cumulative Bulletin 1, December 1919, page 45. The ruling was made under section 202 of the Revenue Act of 1918. It provides that the mere multiplication of the number of shares of a corporation (resulting from the exchange of one old share of $100 par value for four new shares each having a par value of $25) when not accompanied by conversion of surplus into capital stock or revaluation of assets, does not give rise to taxable gain or income to stockholders making the exchange.

It is interesting to note what the Senate Finance Committee Report, which is substantially the same as the House Ways and Means Committee Report, says with respect to exchanges in its comments on section 203 of the Revenue Act of 1924 and its comment on the provisions of section 204, which corresponds to section 202 (d) (1) of the 1921 Act. These comments are:

Section 203: The existing law provides in section 202 (c) that no gain or loss is recognized from an exchange of property unless the property received in exchange has a readily realizable market value. Great difficulty has been experienced in administering this provision. The question whether, in a given case, the property received in exchange has a readily realizable market value is a most difficult one, and the rulings on this question in given cases have been far from satisfactory. Furthermore, the construction placed upon the term by the department has restricted it to such an extent that the limitation contained therein has been applied in comparatively few cases. The provision can not be applied with accuracy or with consistency. It appears best to provide generally that gain or loss is recognized from all exchanges and then except specifically and in definite terms those cases of exchanges in which it is not desired to tax the gain or allow the loss. This results in definiteness and accuracy and enables a taxpayer to determine prior to the consummation of a given transaction the tax liability that will result therefrom.

Section 203 (b): (1) Paragraph (1) of subdivision (b) of the bill corresponds to section 202 (c) (1) of the existing law as amended by the act of March 4, 1923. The existing law provides that no gain or loss is recognized if property held for investment or for productive use in trade or business is exchanged for property of a "like kind or use." The contention was made that this provision divided all property into two classes: Property held for investment and property held for productive use in trade or business; and, consequently, that if any property held for investment was exchanged for other investment property, or if any property held for productive use was exchanged for other

property to be held for productive use, the exchange was for property of a "like kind or use," and the gain was exempt from tax. In the bill the language is changed to provide that the property held for investment or for productive use must be exchanged for a like kind of property. If the property received is of a like kind, it is immaterial whether it is to be held for investment or for productive use. The intention of the party at the time of the exchange is difficult to determine, is subject to change by him, and does not represent a fair basis of determining tax liability. Consequently it is provided in the bill that no gain or loss is realized if the property received is of a like kind, to be held either for investment or for productive use. In the bill as reported, a provision, not contained in the House bill, has been added whereby if common stock is exchanged solely for common stock or preferred stock for preferred stock in the same corporation, no gain or loss shall be recognized.

(2) Paragraph (6) corresponds to section 202 (d)(1) of the existing law. The general theory of this paragraph is that where no gain or loss is recognized as resulting from an exchange, the new property received shall for purposes of determining gain or loss from a subsequent sale, and for depreciation and depletion, be considered as taking the place of the old property given up in connection with the exchange. The provisions of section 203 of the bill that no gain or loss is recognized from certain exchanges do not grant an exemption and are not so intended. These provisions are based upon the theory that the types of exchanges specified in section 203 are merely changes in form and not in substance, and consequently should not be considered as effecting a realization of income at the time of the exchange. In other words, these provisions result not in an exemption from tax but in a postponement of tax until the gain is realized by a pure sale or by such an exchange as amounts to a pure sale. It follows, therefore, that in the case of such an exchange, the property received should be considered as taking the place of the property exchanged. If in connection with the exchange money is received which is not taxed, obviously the basis of the old property should be reduced to that extent since the taxpayer has in part received a return of capital. But if money is received in connection with the exchange and the money is taxed, it is equally obvious that the basis of the old property should not be affected.

It would appear from these comments that it was the intention of the framers of the act that the cost of all the property exchanged should be considered to be the cost of all property received. This being the case, and the language of the statute carries this meaning, there is no occasion for treating any particular part of stock received on a nontaxable exchange as taking the place of any particular stock exchanged, and the cost of all the stock exchanged is to be the basis of all the stock received.

Although an exchange of stock for stock in the same corporation made in 1923 would appear to have been a taxable transaction under the Revenue Act of 1921, as amended, the respondent did not treat it as such, presumably under T.B.R. 39 referred to above. Congress approved this ruling by incorporating it in all subsequent acts. This being the case, the exchange was a nontaxable exchange, and under the provisions of section 202 (d) (1) the basis of the shares received on such an exchange is the cost of the shares exchanged. Both the

exchange in 1923 and the exchange in 1928 of stock for stock in the same corporation call for the same rule with respect to the basis of the stock received. We hold, therefore, that under both the exchange in 1923 and the exchange in 1928 the cost of the stock exchanged should be averaged over the total shares received on the exchange.

An exchange of stock for stock in the same corporation was considered by the Board in *William P. Jenks*, 22 B.T.A. 910. In that case the taxpayer owned stock in an oil company which he surrendered in 1923 and received therefor in stock of the same company new shares in the ratio of two of the new for five of the old, the converse of what happened here. It was contended by the Commissioner with respect to the disposition of two blocks of this new stock (one a gift) made after this exchange, that the exchange of stock made the application of the " first in, first out " rule impracticable and resort should be had to average cost. This Board thought otherwise. We said:

* * * The disposition in 1923, of two lots of stock of 1,000 shares and 4,000 shares, the former a gift by the petitioner to his daughter and the latter an exchange for stock of the Mount Kemble Corporation, should be considered as having been made at cost. The exchange of all holdings for new stock is merely one step in determining cost of the stock sold in 1925. The new shares take the same cost as the old shares for which they were given in exchange.

The Board's reasoning does not appear. We think that this question did not receive adequate consideration in the *Jenks* case, and as it conflicts with the view here expressed, that case is now overruled.

The cost to Oliver of the 2,948 shares, which he exchanged in 1923 for 11,792 shares, was $249,573. This cost becomes the basis of the 11,792 shares, 5,000 of which Oliver gave to his wife. The basis in the hands of Oliver of the 5,000 shares was $105,823, hence that is the basis to petitioner.

The shares which petitioner exchanged in March 1928 in the three-for-one exchange had a basis in her hands of $105,823, plus $10,150, or a total basis of $115,973. She received on this exchange 19,050 shares, which take the same basis of $115,973, or $6.0878 per share. Sec. 112 (b) (2) and sec. 113 (a) (6). Petitioner sold 100 of these shares in December 1928. Respondent treated the 100 shares sold as being part of 300 shares received in exchange for the 100 shares acquired by gift in June 1925, which had cost the donor $10,150. He also treated as the basis of the remaining 200 shares two thirds of such cost, or $6,766.67. Petitioner has not questioned this method. However, respondent was wrong in determining that 200 of the shares received on the three-for-one exchange in March

1928 had a cost basis of $6,766.67. The basis of the stock received on this exchange was $6.0878 per share. Therefore, the basis of the remaining 18,050 shares which were subsequently exchanged for 20,663 and a fraction shares of American Radiator stock was $115,364.22. This amount, reduced by the amount received for the fractional share, is the basis to be apportioned to the American Radiator stock and rights.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

Trammell dissents.