ALVAN T. FULLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73759.   Promulgated September 14, 1934.

*John W. Townsend, Esq.*, for the petitioner.
*Elden McFarland, Esq.*, for the respondent.

158

OPINION.

BLACK: From the foregoing findings of fact it will be seen that in the taxable year petitioner sold 40,000 shares of his holdings of Packard Motor Car Co. stock. Fifteen thousand shares were of a purchase made after the splitup of September 3, 1929. As to the profits on this block of 15,000 shares, there is no controversy. Of the 40,000 shares sold, 25,000 were acquired in the splitup, and it is concerning the taxable profit on these 25,000 shares that the controversy arises. Petitioner has sought by a method of bookkeeping to identify the 25,000 shares of stock in question with some of the later higher priced purchases made prior to the splitup. By this method he allocates the 25,000 shares sold to the higher cost stock and thereby reduces the taxable gain. This of course would be permissible if the shares sold could be actually identified as being part of the higher priced purchases, but it seems plain that there can be no such identification. What petitioner has done is a mere mental process, and this does not amount to an identification in fact.

Petitioner's counsel in his opening statement at the hearing stated that "Neither the books of the petitioner nor those of the Packard Company give information sufficient to identify the newly acquired

stock certificates with specific shares of previously held stock." The accuracy of this statement seems to be quite well borne out by the evidence in the case.

Because there could be no actual identification of these 25,000 shares with the later bought higher cost shares, as petitioner endeavored to make, respondent contends that article 600 (3) of Regulations 74, familiarly known as the first in, and first out rule, applies. We see no reason for the application of the first in, first out rule in the present proceeding. What petitioner did was to sell 25,000 shares of a lot of 270,270 shares, which he acquired in a splitup September 3, 1929. The cost of these 270,270 shares was the aggregate cost of all the shares for which they were exchanged. The basis of each of the 25,000 shares sold is the aggregate cost of all the shares owned by petitioner at the time of the exchange, September 3, 1929, divided by 270,270 shares received by petitioner in exchange on that date. This is in accordance with the rule laid down by the Board in *Christian W. Von Gunten*, 28 B.T.A. 702, and *Olive Hume Oliver*, 30 B.T.A. 1381. The latter case seems particularly in point with the case at bar. In that case there had been two or three splitups of stock of the Standard Sanitary Co. shares and finally a statutory reorganization with the American Radiator Co. After reciting the facts connected with these several transactions, we stated, in discussing the first in, first out rule, as follows:

The first in, first out rule was adopted as a rule of convenience, in the absence of clear evidence as to the identity of lots sold and their cost. When all lots purchased and acquired by stock dividend distributions are exchanged for new shares of a different par value, the cost of all of the shares exchanged becomes the basis of the total shares received. The shares received are one lot acquired at the same time, whether the number of shares acquired is represented by one or more certificates. Hence, there is no necessity for such a rule. The question here involved was suggested in *Mickler Holding Co.*, 29 B.T.A. 300, but was not decided.

Again, in the concluding part of the opinion, we said:

It would appear from these comments that it was the intention of the framers of the act that the cost of all the property exchanged should be considered to be the cost of all property received. This being the case, and the language of the statute carries this meaning, there is no occasion for treating any particular part of stock received on a nontaxable exchange as taking the place of any particular stock exchanged, and the cost of all the stock exchanged is to be the basis of all the stock received.

Although an exchange of stock for stock in the same corporation made in 1923 would appear to have been a taxable transaction under the Revenue Act of 1921, as amended, the respondent did not treat it as such, presumably under T.B.R. 39 referred to above. Congress approved this ruling by incorporating it in all subsequent acts. This being the case, the exchange was a nontaxable exchange, and under the provisions of section 202 (d) (1) the basis of the shares received on such an exchange is the cost of the shares exchanged. Both the exchange in 1923 and the exchange in 1928 of stock for stock in the

same corporation call for the same rule with respect to the basis of the stock received. We hold, therefore, that under both the exchange in 1923 and the exchange in 1928 the cost of the stock exchanged should be averaged over the total shares received on the exchange.

In the instant case there is no dispute as to the number of shares sold, and none as to the price received for them. The only dispute is as to the cost basis to be used in determining the profit. That basis should be computed in accordance with the views hereinabove expressed and the deficiency computed accordingly.

*Decision will be entered under Rule 50.*