LOUIS G. NEVILLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64598. Promulgated November 24, 1933.

*Loomis Patrick, Esq.*, for the petitioner.
*C. A. Ray, Esq.*, for the respondent.

**OPINION.**

SMITH: The petitioner seeks the redetermination of a deficiency in income tax for 1929 in the amount of $356.98.

The petitioner is engaged in business on his own account as a dealer and broker in securities in Boston, Massachusetts. He is also the treasurer of the Standard Securities Co., an association with transferable shares whose headquarters and transfer offices are in the office of the petitioner.

On December 28, 1929, the petitioner sold to the Standard Securities Co. 500 shares of Standard Securities Co. stock for the sum of $9,750. The following certificates, acquired on the dates and at the cost prices shown, were delivered by the petitioner to the Standard Securities Co. on December 28, 1929:

| Certificate No. | Number of shares | Date acquired | Cost |
|---|---|---|---|
| 158 | 50 (a) | 4/17/15 | $4, 968. 19 |
| 289 | 50 (b) | 4/10/16 | 16, 136. 36 |
| 290 | 50 (b) | 4/10/16 | |
| 291 | 50 (b) | 4/10/16 | |
| A 24 | 100 (c) | 12/6/27 | 1, 992. 00 |
| A 25 | 100 (c) | 12/6/27 | |
| A 31 | 100 (d) | 3/12/15 | 9, 912. 82 |
| Total | 500 | | 33, 009. 37 |
| Selling price | | | 9, 750. 00 |
| Loss | | | 23, 259. 37 |

In his income tax return for 1929, the petitioner claimed that the loss sustained upon the sale of these securities was the difference between $9,750, the selling price, and $52,130.50, which represents the cost to the petitioner of the first 500 shares of Standard Securities Co. stock acquired by him and owned by him at the date of the sale

of the 500 shares in question. The petitioner's computation is based on the assumption that he is entitled to a cost based on the so-called "first in, first out" rule, and it is stipulated that if that rule is applicable to the facts which obtain in this proceeding the petitioner's computation of the deductible loss is correct.

For many years the petitioner has been engaged in the business of a dealer in securities on his own account. He has uniformly computed gains and profits upon sales of securities upon the basis that any shares sold were those first purchased by him and he has always borne the burdens and obtained the benefits from such method of reporting up to the taxable year 1929.

Article 58 of Regulations 74 provides, in part, as follows:

ART. 58. *Sale of stock and rights.*—When shares of stock in a corporation are sold from lots purchased at different dates and at different prices and the identity of the lots can not be determined, the stock sold shall be charged against the earliest purchases of such stock. * * *

The identical language shown above appears in each of the regulations promulgated in connection with the Revenue Acts of 1918 to 1926, inclusive.

The above regulation, called by counsel the "first in, first out" rule, is a rule of expediency. It is simply to the effect that where a person owning several lots of stock purchased at different dates and different prices can not identify the shares sold as belonging to any particular lot, it shall be assumed that the shares sold represented those first purchased.

In *Cleveland Trust Co., Executor*, 24 B.T.A. 132, 1,500 shares of the National Acme Co., represented by certificates numbered 1545 to 1554, inclusive, for 100 shares each, and certificates numbered 1608 to 1612, inclusive, for 100 shares each, were sold by E. C. and Dora V. Henn in 1920 for $39,694.50. The issue related to whether in that case the petitioner had established a proper identification of the stock. In its opinion the Board stated in part as follows:

* * * The petitioners have shown clearly that the shares of capital stock of the National Acme Company sold in 1920 for $39,694.50 were the same shares purchased by them in 1919 and represented by certificates Nos. 1545 to 1554, inclusive, and Nos. 1608 to 1612, inclusive, for an aggregate price of $55,221.75. At the time of purchase the certificates were deposited with the trustee and became a part of the corpus of the trust fund. They were withdrawn therefrom under the usual "revocation" notices and sold in December, 1920. By thus identifying the shares so bought and sold, and the cost and sale price thereof, the petitioners have established a basis for the calculation of gain or loss in the transaction. * * *

Cf. *Henry C. Heinz*, 28 B.T.A. 276.

In *Howbert* v. *Penrose*, 38 Fed. (2d) 577, the court quoted with approval from *Towne* v. *McElligott* (D.C.), 274 Fed. 960, 963, the following:

The plaintiff answers this argument by saying that, if so, all shares at any time held by a stockholder must be brought into hotch-pot and averaged. I scarcely think that consistency requires me to go so far. The law may, and in fact does, recognize an identity in every share, which can indeed be traced upon the books of the company, at least until certificates are consolidated, and later subdivided. The purchase of a number of shares can be earmarked by the certificate, and it is an enormous convenience to keep the purchases separate. * * *

In *Snyder* v. *Commissioner* (C.C.A., 3d Cir.), 54 Fed. (2d) 57, the court had before it for decision the question of identification of shares of stock in a marginal account. In the course of its opinion the court stated: "The shares are not delivered or earmarked or allocated to the customer even on the books," clearly indicating that if the shares could have been identified the decision might have been otherwise. Cf. *David Stewart*, 17 B.T.A. 604; *Richard B. Turner Estate*, 26 B.T.A. 1204.

In *Skinner* v. *Eaton* (C.C.A., 2d Cir.), 45 Fed. (2d) 568; certiorari denied, 283 U.S. 837, those shares which were identified were excluded from the "first in, first out" rule. In that case the court said:

* * * The Revenue Act does not permit merging the cost of stock acquired at various prices and over a period of years. Shares of stock are identifiable, and, for income tax purposes, they are regarded as specific properties. *De Ganay* v. *Lederer*, 250 U.S. 376, 39 S.Ct. 524, 63 L.Ed. 1042; *Cummings* v. *Clark*, 2 F. (2d) 442 (C.C.A. 3) ; *Towne* v. *McElligott, supra.*

The decision of the Supreme Court in *De Ganay* v. *Lederer*, cited by the Circuit Court of Appeals for the Second Circuit in *Skinner* v. *Eaton, supra*, authoritatively decides that from an income tax standpoint shares of stock are identifiable and regarded as specific property.

Since there can be no question that the shares of stock sold by the petitioner in 1929 are identifiable as having been purchased on the dates and for the prices stipulated, the contention of the respondent that the cost basis for the determination of the loss upon the sale of the 500 shares is $23,259.37 is sustained.

*Judgment will be entered under Rule 50.*