HELEN V. KELCHNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71197. Promulgated October 3, 1934.

*Frederick G. Weisser, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, and *F. C. Adams, Esq.*, for the respondent.

### OPINION.

SMITH: The respondent has determined a deficiency in petitioner's income tax for 1930 in the amount of $8,692.88. The petitioner alleges that the respondent erred in computing the gain upon the sale of certain shares of stock. Briefly stated, the facts, over which there is no serious dispute, and the question in issue are as follows:

The petitioner in 1930 was the owner of 3,200 shares of stock of the Delaware, Lackawanna & Western Railroad Co. She had acquired 1,600 of such shares from her husband's estate on December 31, 1929, and the other 1,600 shares at different dates previous to

that time. In the fall of 1930 she decided to sell 1,200 of the last acquired shares and instructed her attorney who had charge of her affairs to do so. She had been advised by the attorney that a deductible tax loss would result from the sale of the last acquired shares, whereas a taxable gain would result from the sale of the previously acquired shares. The attorney thereupon, on November 6, 1930, gave orders to a brokerage firm " for the sale of 1,200 shares of Delaware, Lackawanna & Western Railway stock." A day or two later the attorney was notified of the sale by the brokerage firm and was asked to make delivery of the shares. He then went to the safe-deposit box where all of the shares in question were kept, together with other securities, and selected certificates for 1,200 shares which he delivered to the brokers. When the transaction was completed the attorney caused entries to be made in petitioner's record book showing the sale of 1,200 of the 1,600 shares of Delaware, Lackawanna & Western Railroad Co. stock acquired on December 31, 1929, and the amount of the loss sustained thereon. Soon thereafter the attorney wrote the petitioner a letter advising her that a sale had been made of the 1,200 shares of the Delaware, Lackawanna & Western Railroad Co. stock acquired on December 31, 1929, with a resulting loss of $55,589. The attorney later assisted in making the petitioner's income tax return for 1930, in which a deduction was claimed for the above amount of the alleged loss.

About two years after the above described sale took place it was discovered, in connection with an income tax investigation, that the certificates which were delivered to the brokerage firm were not for the shares which the decedent had acquired from her husband's estate in 1929, but were the certificates for previously acquired shares. In selecting the certificates from the safe-deposit box the attorney had inadvertently withdrawn the wrong ones. The cost basis of the last acquired shares being less than the selling price, a deductible loss would have resulted from their sale, whereas on the cost bases of the earlier acquired shares a taxable gain was realized. The issue thus presented is whether the petitioner actually sold the last acquired shares with a resulting loss, notwithstanding that the certificates for the earlier acquired shares were mistakenly delivered to the purchaser.

The petitioner relies strongly upon the case of *Howbert* v. *Penrose*, 38 Fed. (2d) 577. In that case the Circuit Court for the Tenth Circuit sustained the lower court in holding that where the taxpayer intended to sell certain shares of stock acquired in 1916 and 1917 but, by mistake, an employee of the trust company acting for the taxpayer delivered certificates for shares acquired prior to 1913, there was nevertheless a sale of the shares acquired in 1916 and 1917.

It is readily apparent that the facts in *Howbert* v. *Penrose, supra*, in so far as they go to the merits of the question, are not materially different from those in the instant case. However, a possible distinction between the cases is to be found in the ruling of the court in that case that it was bound to accept the finding of the trial court, the finding being supported by the evidence, that the taxpayer intended to sell, and *did sell*, the shares acquired in 1916 and 1917, although certificates were delivered for other shares.

In our opinion the evidence before us does not warrant the finding that the petitioner here sold the shares acquired in 1929. Admittedly, she intended to do so, but we do not understand that a mere intention on the part of one of the contracting parties determines the character of a sale. The petitioner simply offered for sale 1,200 shares of the Delaware, Lackawanna & Western Railroad Co. stock and, after the sale was made, delivered to the broker certificates for that number of shares. There was no agreement that the broker was to sell or that the petitioner was to deliver specific shares or certificates. Presumably the matter was of no interest to the buyer. The delivery of any certificates for the requisite number of shares of that stock would have satisfied the sales contract. Not until the delivery was made was there any identification of the shares in relation to the sales agreement. How can it be said, then, that there was either a contract to sell or a sale of the particular shares which the petitioner had acquired in 1929?

Another more recent case than *Howbert* v. *Penrose, supra*, which involves facts almost identical with those in the instant case, is *Cole* v. *Helburn*, 4 Fed. Supp. 230, decided in the District Court for the Western District of Kentucky on March 24, 1933. The court there said:

I cannot sustain plaintiff's contention with reference to the sale of the Atlantic Coast Line Railroad Company stock. He did not direct his broker to sell any particular stock. He simply directed him to sell three hundred shares, and, when the time came for plaintiff to deliver the property sold, he delivered certificates representing the stock purchased by him on February 24, 1928. There is no claim that plaintiff and the purchaser of this stock had any agreement or understanding as to the particular shares of stock involved in the transaction. Therefore, there can be no contention successfully made that the minds of the parties were in agreement as to the particular shares of stock bought, and that by mistake other and different shares were delivered. The only mistake was made by the plaintiff himself, and for this he must suffer. As it is beyond question that he actually sold and delivered the three hundred shares bought on February 24, 1928, the price paid for these shares on that date must be treated as the cost in computing plaintiff's profit on the sale of these shares.

The above reasoning of the court seems to us to be sound and in our opinion should be followed in the instant case.

We held in *Louis G. Neville*, 29 B.T.A. 450, that when shares of stock in a corporation are sold from lots purchased at different times and at different prices and the identity of the shares sold can be determined from the certificates delivered, gain or loss must be computed upon the cost or other basis of the shares represented by the certificates delivered. The question there in issue was whether the shares of stock sold could be identified or whether the rule of first acquired, first sold should be applied in accordance with article 58 of Regulations 74.

In *Mickler Holding Co.*, 29 B.T.A. 300, we held that where there is the mere intention to sell shares of stock or the mere declaration that shares sold were acquired at a certain time and price, without sufficient proof to identify the shares sold with any particular purchases, the rule of " first in, first out " must apply. The Circuit Court of Appeals for the Third Circuit reached the same conclusion in *Commissioner* v. *Merchants & Manufacturers Fire Ins. Co.*, 72 Fed. (2d) 408, reversing a memorandum opinion of the Board upon which the petitioner chiefly relies. See also *Mary E. Horner*, 28 B.T.A. 360; affd., 72 Fed. (2d) 407.

It is stipulated that the petitioner still owns certificates representing 1,200 shares of the Delaware, Lackawanna & Western Railroad Co. stock which she acquired from her husband's estate on December 31, 1929. She sold the other 400 of the 1,600 shares so acquired in 1931 and computed the gain or loss thereon on a basis of $143 per share, the market value of the shares at December 31, 1929.

It is further agreed that the cost of the previously acquired 1,600 shares was as follows:

| Date | Shares | Price per share | Cost |
|---|---|---|---|
| March 6, 1916 | 100 | $218+ | $21,813.50 |
| April 9, 1917 | 217 | 209 | 45,353.00 |
| July 14, 1917 | $437\frac{85}{100}$ | 207.50 | 90,752.20 |
| July 14, 1917 | $45\frac{64}{100}$ | 206.25 | 9,413.25 |
| August 20, 1921 | [1] 800 | | |

[1] 100% stock dividend.

The determination of the respondent is sustained.

Reviewed by the Board.

*Judgment will be entered for the respondent.*