LEWIS K. WALKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73728.    Promulgated March 11, 1937.

*Samuel E. Gawne, Esq.,* for the petitioner.
*E. L. Corbin, Esq.,* for the respondent.

OPINION.

## Guardian Detroit Union Group, Inc., Stock.

ARUNDELL: The only issue on the sale of this block of stock is whether the basis of the shares sold should be determined by the average cost method or the application of the first in, first out rule. Petitioner contends for the average cost method as against the respondent's use of the first in, first out principle.

All of the Union Group shares were acquired by petitioner at the one time, December 30, 1929, pursuant to a statutory reorganization. The proper method of allocation of the basis of stock received in connection with a reorganization is the average basis of the stock given in exchange. *Christian W. Von Gunten*, 28 B. T. A. 702; affd., 76 Fed. (2d) 670; *Commissioner* v. *Bolender*, 82 Fed. (2d) 591.

## Detroit Bankers Co. Stock.

In regard to petitioner's sale of 330 shares of Detroit Bankers Co. stock, the first issue, as in the case of the Detroit Union Group, Inc., stock, is whether the first in, first out rule or the average cost method should be employed in determining the basis of the stock sold. It would appear that, without the special circumstances present here, which are treated under the next issue, the principle of the *Von Gunten* case would apply. The other two issues in connection with this sale are (1) how to determine the amount of the basis which remains to be recovered, and (2) whether the sale as to part of the 330 shares was completed in 1929 prior to the taxable year in question.

The total cost to the petitioner of all of his stock in the various predecessor corporations which ultimately through reorganizations

became the Detroit Bankers Co. was $14,110; on his sales of two blocks of stock in those predecessor companies in 1925 and 1929 he deducted a cost of $10,600 and so reported the gain on his income tax returns. These returns were accepted by the Commissioner and as to them the statutory period of limitations has expired. The petitioner now contends that the cost he was allowed on those sales was excessive because of his use of the first in, first out rule when he should have used the average cost method; he further contends that he is not now estopped from using the "correct" (average) method of computing the basis applicable to those sales. We agree that no issue of estoppel is here presented. Indeed, as to the 1925 sale the petitioner appears to have committed no error in using the first in, first out rule, since the shares sold were not received on a reorganization, but in a mere reissue of certificates. *Solomon B. Kraus*, 33 B. T. A. 1088.

As we understand the first in, first out rule and the other methods for allocating cost, they are not rules of law in the strict sense, but merely rules of convenience or rules of thumb for making effective in several common situations the provision of the statute that a taxpayer can recover his cost before becoming taxable on any gain. The rules for allocation of basis are not ends in themselves, but only means to the end of returning to the taxpayer his capital investment free from tax, and if they have partially accomplished this result, even through what was perhaps an erroneous application of one method in a situation which more properly called for another, still we do not think it is now appropriate to apply retroactively a theoretically correct method and get an erroneous result. To apply petitioner's proposal here would leave him in 1930 with a larger basis than actually remains to him in view of the amount of the basis used in computing his gain on the earlier sales. It would result in his recovery of part of his basis twice. What has happened here is that the petitioner recovered $10,600 of his $14,110 basis prior to 1930, leaving $3,510 to be recovered. The statute authorizes the recovery of basis only once. With the exact basis susceptible of determination, and with all the stock finally disposed of, we think it would be error to substitute for the facts a theory which distorts the actual gain or loss. According to the copy of the deficiency notice before us, the respondent used $3,300 as the basis for the gain on the sale in 1930. As stated above, the figures in evidence indicate a remaining basis of $3,510. These figures, if in error, may be corrected in the settlement under Rule 50.

Finally, the petitioner contends that $\frac{7}{33}$ of his Detroit Bankers stock was sold in 1929 and that portion of his gain should be allocated to that year. In November of 1929 he ordered the sale of 330 shares of Detroit Bankers stock on a "when, as and if issued" basis. On December 12, 1929, he delivered to his brokers a certificate of deposit for 7 shares of the predecessor company which were to become exchange-

able for 70 shares of Detroit Bankers Co. stock upon completion of the organization of the latter company.   On January 8, 1930, the Detroit & Security Trust Co. stock became exchangeable for Detroit Bankers stock and on January 16, 1930, the petitioner delivered to his brokers his remaining certificates of deposit of stock of the predecessor, which, together with the certificate for 7 shares previously delivered, were exchanged by the brokers for 330 shares of Detroit Bankers Co. stock.   We do not think that the delivery of the certificate for 7 shares in 1929 had the effect of then completing a sale.   It was not Detroit & Security Trust Co. shares which the petitioner sold, but rather, as it is specifically stipulated, "330 shares of stock of Detroit Bankers Company when, as and if issued."   There is no evidence to indicate that delivery of the Detroit & Security Trust Co. shares would be acceptable in performance of the petitioner's contract to sell stock of the reorganized company.   There is no evidence to indicate that such delivery was in fact accepted as performance of the petitioner's contract.   The only evidence on this point is of a contrary import.   Petitioner's account with his broker which records the delivery of the certificate of deposit shows the petitioner's position as of November 29, 1929, "Short 330 Det Bankers W I."   The delivery of the 7 certificates of deposit on December 12 is recorded "7 Det & Sec Trust C/D Recd" and the petitioner's new position is stated "Short 330 Det Bankers W I, Long 7 Det & Sec Trust C/D."   This record shows that the certificate of deposit was not accepted by his brokers as reducing the number of shares he was short in Detroit Bankers stock.·  Nor in our opinion would this delivery constitute part performance of his contract as a matter of law.   Dealings in stock on a "when issued" basis are not sales of stock, but merely sales of contracts to sell stock which are made on the express condition that no delivery and payment are required unless and until the stock is issued.   Meyer on the Law of Stock Brokers and Stock Exchanges, § 30.   Unless and until the stock is issued, no performance is required and if the stock is never issued the contract falls by its own terms, the only money changing hands being the broker's commissions.   *Sices* v. *Ungerleider*, 314 N. Y. S. 255.   There is no evidence in the instant case that at the time of sale in November 1929 it was assured that the plans of reorganization would be successful and that stock of the new company would ever be issued.   This would explain why the stock of the new company was sold on a "when issued" basis.   The reorganization was not actually completed and the stock did not become available for exchange until January 8, 1930.   Therefore, before that time there could have been no completed sale of Detroit Bankers stock, and all of the petitioner's gain from this sale was realized in 1930.

Reviewed by the Board.

*Decision will be entered under Rule 50.*