T.C. Memo. 2004-158

UNITED STATES TAX COURT

THOMAS HENRY KOPPEL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1590-03.                    Filed July 6, 2004.

Thomas Henry Koppel, pro se.

<u>Michael E. Melone</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined a deficiency in
petitioner's 2000 Federal income tax in the amount of $8,296 and

a section 6662(a) accuracy-related penalty in the amount of $1,659.[1]  After concessions,[2] the issues for decision are:  (1) Whether a distribution of Nortel Networks Corp. (Nortel) stock that petitioner received from BCE, Inc. (BCE), is taxable as a dividend and (2) whether petitioner is liable for a section 6662(a) accuracy-related penalty for substantial understatement of tax.

                        FINDINGS OF FACT

     Some of the facts have been stipulated.  We incorporate the stipulated facts into our findings by this reference.  Petitioner resided in Alameda, California, when he filed the petition.

     As of February 29, 2000, BCE, a Canadian corporation, owned 539,854,492 shares, or 38.2 percent, of the outstanding common stock of Nortel.  On or before May 9, 2000, BCE distributed a portion of its Nortel stock to BCE's shareholders in a spinoff transaction.[3]  According to BCE's consolidated statement of

_____

     [1]All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

     [2]In a stipulation of settled issues, the parties agreed that petitioner was liable for income taxes on the following items: ordinary dividends in the amounts of $2,436.19, $3,015, $1,007, and $421; a capital gain in the amount of $1,530; and unreported taxable Social Security benefits in the amount of $1,065.  The parties also agreed that petitioner correctly reported an ordinary dividend in the amount of $1,285.

     [3]The parties repeatedly refer to the transaction as a spinoff but do not contend that it was a qualifying spinoff under
                                        (continued...)

retained earnings for 2000 (retained earnings statement), at the end of 2000, BCE had retained earnings in the amount of approximately $1.5 million.

During May 2000, petitioner held BCE stock in his Charles Schwab & Co., Inc. account No. 51933001 (Charles Schwab account). On May 9, 2000, pursuant to the spinoff transaction, petitioner received from BCE 471 shares of Nortel stock. According to the Form 1099-DIV, Dividends and Distributions, issued for the Charles Schwab account for 2000, the value of the Nortel stock that petitioner received was $27,641.81.

On Schedule B, Interest and Ordinary Dividends, of petitioner's 2000 Form 1040, U.S. Individual Income Tax Return, petitioner reported total ordinary dividends from the Charles Schwab account in the amount of $34,101.49. Petitioner then subtracted the full amount of the Nortel stock distribution and made the following notation: "LESS SPINOFF REPORTED AS ORDINARY DIVIDEND (SEE EXHIBIT 1)". The attached "Exhibit 1" was a copy of petitioner's Charles Schwab account statement for May 1-31, 2000, which indicated petitioner's receipt of the Nortel stock on May 9, 2000. On the statement, petitioner had drawn an arrow to the Nortel stock transaction and written "NOT AN ORDINARY

---

[3](...continued)
sec. 355. Our use of the term "spinoff" does not mean the transaction qualified for nonrecognition treatment under sec. 355(a)(1).

DIVIDEND".  Petitioner did not include the Nortel stock distribution in his gross income.

In a notice of deficiency dated December 9, 2002, respondent determined that the full amount of the Nortel stock distribution constituted a taxable ordinary dividend.  Respondent also determined that petitioner was liable for a section 6662(a) accuracy-related penalty for substantial understatement of tax.

On January 29, 2003, petitioner filed a petition with this Court contesting respondent's determination.  In his petition, petitioner made the following allegation:

> This stock distribution represents appreciated assets of Canadian corporations.  The intent and agreement of NAFTA [the North American Free Trade Agreement] (Art. 1109.3) discourages the U.S. from taking earnings that are part of Canadian corporations.  The tax should be taken when the stock is sold.  Also, the tax code may allow the payer to value the distribution based on the net change in total market value.  This would be needed only in those rare cases when a corporation distributed over half of its assets in a non-cash way.

Additionally, on August 12, 2003, petitioner filed an amendment to petition, in which petitioner alleged that "a devaluation required by the New York Stock Exchange for shares directly related to the distribution * * * is a liability that may be excluded from the distribution per the tax code."

OPINION

I.  Dividend Classification of the Nortel Stock Distribution

Section 61(a)(7) includes dividends in a taxpayer's gross

income.  If a corporation distributes property[4] to its shareholders from the corporation's accumulated earnings and profits or its current earnings and profits for the taxable year, the distribution constitutes a dividend.  Secs. 301(a), (c)(1), 316(a).  Section 301(b)(2) requires that the amount of the distribution be reduced, but not below zero, by (1) the amount of any corporate liabilities the shareholder assumed in connection with the distribution and (2) the amount of liabilities to which the property is subject immediately before and after the distribution.

As we understand his position, petitioner principally relies on the following two arguments:[5]  (1) BCE lacked sufficient earnings and profits for the distribution to constitute a dividend;[6] and (2) petitioner's obligation to accept BCE when-issued shares is a liability that reduces the amount of the

---

[4]Sec. 317(a) defines "property" as "money, securities, and any other property; except that such term does not include stock in the corporation making the distribution (or rights to acquire such stock)."

[5]At trial, petitioner also argued that, when BCE distributed the Nortel stock to him, he received an "investment in Canada", exempt from taxation under the North American Free Trade Agreement.  In response to questioning by this Court, however, petitioner conceded that he was unaware of any provision of U.S. tax law that would exempt from tax his investment in a Canadian corporation.

[6]Although petitioner did not include this argument in his petition or the amendment to his petition, respondent agrees that the issue is fairly before the Court.

distribution.  Petitioner bears the burden of proof.[7]  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).

A.  Sufficiency of BCE's Earnings and Profits

Petitioner contends that BCE had insufficient earnings and profits to make a dividend and that, as a result, the distribution of Nortel stock constituted a return of capital.  According to petitioner, BCE's retained earnings statement is incorrect.  The retained earnings statement describes the total value of the Nortel shares distributed to BCE's shareholders as equal to approximately $10 billion.  Petitioner asserts, however, that the total value of the Nortel stock distribution was actually approximately $59 billion, which amount exceeded BCE's earnings and profits.

We cannot accept petitioner's argument.  Not only has petitioner failed to offer any credible evidence in support of his contention, the retained earnings statement clearly reflects that BCE made the Nortel stock distribution from BCE's earnings and profits.

B.  Reduction of the Distribution Amount

As his second argument, petitioner contends that, on the effective date of the Nortel stock distribution, BCE's[8] stock

---

[7]Petitioner has not argued that respondent bears the burden of proof, nor has petitioner satisfied the requirements of sec. 7491(a)(1).

[8]Petitioner's argument specifically mentioned BCE's stock.
(continued...)

traded "the regular way" and "as new 'when issued'" stock.[9] According to petitioner, he was obligated to accept lower priced, when-issued shares, which obligation constituted a liability and reduced the value of the Nortel stock distribution.

Again, we disagree. Petitioner has introduced no evidence to establish that he received when-issued shares pursuant to the Nortel stock distribution, let alone that the value of his shares was somehow lessened. Moreover, petitioner has not shown that this so-called liability was a corporate liability that petitioner assumed or a liability to which the property was subject immediately before and after the distribution. See sec. 301(b)(2). To the contrary, the record clearly demonstrates that petitioner received a stock dividend includable at its fair market value in his gross income. See secs. 61(a)(7), 301(a), (b), and (c)(1), 316(a).

## II. Section 6662(a) Accuracy-Related Penalty for Substantial Understatement of Tax

If any portion of an underpayment of tax required to be shown on a taxpayer's return is attributable to any substantial

---

[8](...continued)
It is not clear whether the reference to BCE stock was a mistake or whether petitioner was arguing that the value of the BCE stock affected the Nortel stock he received. In any event, the lack of clarity does not change the conclusion we reach.

[9]In Walker v. Commissioner, 35 B.T.A. 640, 645 (1937), we explained that "Dealings in stock on a 'when issued' basis are not sales of stock, but merely sales of contracts to sell stock which are made on the express condition that no delivery and payment are required unless and until the stock is issued."

understatement of income tax, the taxpayer is liable for a penalty equal to 20 percent of that portion of the underpayment. See sec. 6662(a) and (b)(2). A substantial understatement of income tax consists of an understatement that exceeds the greater of (1) 10 percent of the tax required to be shown on the return for the taxable year or (2) $5,000. Sec. 6662(d)(1)(A). The amount of the understatement will be reduced to the extent that the taxpayer (1) had substantial authority for the tax treatment of an item or (2) adequately disclosed in the return or in an attached statement the relevant facts affecting the tax treatment and had a reasonable basis for the tax treatment. Sec. 6662(d)(2)(B)(i) and (ii). In addition, section 6664(c)(1) provides an exception to the section 6662(a) accuracy-related penalty where the taxpayer shows reasonable cause for, and that the taxpayer acted in good faith with respect to, any portion of the underpayment. See also sec. 1.6664-4(a), Income Tax Regs.

Pursuant to section 7491(c), the Commissioner must produce sufficient evidence indicating that imposition of the section 6662(a) accuracy-related penalty against an individual is appropriate. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent has met this burden of production. Petitioner now must demonstrate that respondent's determination is incorrect. Id. at 447.

Although petitioner disputed the section 6662(a) accuracy-related penalty in his petition, petitioner has made no arguments under section 6662(d)(2)(B) or 6664(c)(1) against imposition of the penalty. Indeed, when provided the opportunity at trial to address the penalty, petitioner responded: "I haven't been that concerned about it, so I guess the short answer is no, I have nothing." We conclude, therefore, that petitioner is liable for a section 6662(a) accuracy-related penalty for substantial understatement of tax.

We have considered the remaining arguments of both parties for results contrary to those discussed herein and, to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155.</u>